**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**ARTHUR A. AMASH,** *et al.***,**

                              **Plaintiffs,**

   v.                                                      **1:12-cv-837**

**HOME DEPOT U.S.A., INC.,**

                              **Defendant.**

---

**THOMAS J. McAVOY,
Senior United States District Judge**

## DECISION & ORDER

### I.    INTRODUCTION

Plaintiffs commenced this action asserting claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), Article 19, § 650 *et seq*. See 2nd Am. Compl., dkt. # 43. Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") moves for summary judgment dismissing the claims brought by Plaintiff Christin Holloway ("Holloway" or "Plaintiff"). See Mot. dkt. # 138. For the reasons that follow, the motion is granted.

### II.    BACKGROUND

    **a.    Procedural**

Holloway is a former Merchandising Assistant Store Manager ("MASM") for Home Depot who had joined a FLSA conditional certified collective action entitled Aquilino v. Home Depot, Inc., Civil Action No. 04-cv-4100, filed against Home Depot in the United States District Court for the District of New Jersey on December 21, 2006 ("Aquilino action"). See Defendant's Statement of Material Facts

1

Not in Dispute in Support of its Motion for Summary Judgment ("DSOF"), at ¶¶8-9. The Aquilino plaintiffs, including Holloway, alleged that they were misclassified as exempt employees by Home Depot under the overtime requirements of the FLSA, and sought overtime compensation. See id.

On February 15, 2011, the District Court of New Jersey granted Home Depot's motion to decertify the nationwide FLSA collective action. Aquilino, 2011 WL 564039, at *11 (ECF Nos. 341 and 347 in D.N.J. 04-cv-4100). After decertification of the collective action, by Order dated May 2, 2011, the District of New Jersey dismissed the opt-in plaintiffs without prejudice. Aquilino, 2011 WL 564039, at *1, (ECF No. 353 in D.N.J. 04-cv-4100); see Aquilino v. Home Depot. U.S.A., Inc., No. 06-cv-4100 (PGS) (D.N.J. May 2, 2011) (ECF No. 353 in D.N.J. 04-cv-4100).

In February 2011, Holloway joined with other opt-in plaintiffs, filing an action in the United States District Court for the District of Connecticut, alleging violation of the FLSA and various state laws. See Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 262 (D. Conn. 2012). The Costello plaintiffs alleged violations of the FLSA and the wage and hour laws of New Hampshire, New York, and Vermont. Id. at 261. On January 10, 2012, Home Depot filed a motion in the Costello action, pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), to sever the plaintiffs' claims into seven separate actions and to transfer six of those actions to districts in other states, including New York. See id. (ECF No. 55 in D. Conn. 11-cv-0953). On April 10, 2012, the Costello Court granted Home Depot's motion. Id. at 271 (ECF No. 72 in D. Conn. 11-cv-0953).

In April and May 2012, the claims of Holloway and other New York plaintiffs were transferred to the District Court for the Northern District of New York. See Order of Transfer, filed April 30, 2012, (ECF No. 77 in D. Conn. 11-cv-0953), and Amended Order of Transfer, filed May 2, 2012 (ECF No. 79 in D. Conn. 11-cv-0953). Discovery in this action closed on December 20, 2013. See ECF No.

95.

   **b.     Factual[1]**

   Home Depot operates large warehouse-style retail stores that sell home improvement products and services.  DSOF at ¶25.  Each store is managed by a Store Manager and up to seven Assistant Store Managers ("ASMs"), including MASMs, who are the second highest ranking employees, subordinate only to the store manager.  Id. at ¶26.

   MASMs supervise from one to eleven merchandising departments, to wit: Lumber, Building Materials, Flooring, Paint, Hardware, Plumbing, Electrical, Garden, Kitchen & Bath, Millwork, and Décor.  DSOF at ¶¶27-28.  Each merchandising department is staffed by sales associates and a department supervisor.  Id. at ¶28.  In some instances, a single department supervisor may head two departments.  Id.  MASMs supervise the department supervisors and associates assigned to the merchandising departments for which they are responsible.  Id.

   According to the Sales Assistant Store Manager Job Description that applies to MASMs, it is Home Depot's expectation that, *inter alia*, Assistant Store Managers:

   > work with the Store Manager to develop strategies and objectives to drive sales and profitability.  They provide leadership to Associates so that these strategies and objectives are executed successfully.  Sales ASMs must analyze trends, solve problems, and develop themselves and their Associates in order to maximize contribution to store success.

   Id. at ¶29.

   Between June 2001 and February 2005, Holloway was assigned as a MASM to Store 1235 located in Cicero, New York ("Cicero store").  Id. at ¶¶34-35.  The Cicero store was staffed with a

---

[1] Holloway's response to Home Depot's Statement of Material Facts Not in Dispute admits that all facts contained therein are true.  See Dkt. # 169, at ¶4 ("Plaintiff makes no denials of the several paragraphs of Home Depot's Statement of Material Facts Not in Dispute.").

3

store manager, four ASMs, including Holloway, and approximately 130 non-exempt hourly employees. Id. at ¶37; Lawrence Decl. at ¶6; Janaskie Decl. at ¶¶3, 5. As a MASM in the Cicero store, Holloway supervised five merchandising departments: Paint, Hardware, Décor, Lumber, and Building Materials. DSOF at ¶¶39-40. The Paint, Hardware, and Décor departments were each headed by an hourly department supervisor, and the Lumber and Building Materials departments were headed by one hourly department supervisor. Id. at ¶39.

In February 2005, Holloway transferred to Store 1257 in Camillus, New York ("Camillus store"), where she supervised the Millwork, Lumber, Building Materials, and Hardware departments. Id. at ¶¶45-46; Hagan Decl. at ¶11. The Millwork and Hardware departments were each headed by an hourly department supervisor and the Lumber and Building Materials departments shared one hourly department supervisor. DSOF at ¶46. The Camillus store was staffed with one store manager, three or four ASMs, including Holloway, and approximately 140 hourly non-exempt employees. Id. at ¶¶43-45.

In or about October/November 2005, Holloway laterally transferred within the Camillus store to the Operations Assistant Store Manager ("OASM") position.[2] Id. at ¶48. Holloway's employment with Home Depot ended in May 2006. Id. at ¶50.

## III.   STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the

---

[2]Holloway's claims do not cover the period when she was an OASM (October/November 2005 to May 2006). DSOF at ¶17.

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

**IV.    DISCUSSION**

Under both the FLSA and NYLL, there are statutory exemptions from overtime compensation requirements for employees who are classified as *bona fide* executives. See 29 U.S.C. § 213(a)(1); NYLL Article 19 § 651(5)(c). An "employee employed in a *bona fide* executive capacity" is defined as any employee:

> (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[3]

Plaintiff concedes that she satisfied three of the four prongs of the *bone fide* executive exemption contained in 29 C.F.R. § 541.100 by not contesting that: (1) her salary payments met the

---

[3]With the exception of the required minimum salary, New York's Codes, Rules and Regulations mirror the United States Department of Labor's definition of an "executive" employee. See 12 N.Y.C.R.R. § 142-2.14(c)(4)(i)(a)-(e).

5

minimum requirements under both the FLSA and NYLL; (2) she customarily and regularly directed the work of two or more other employees; and (3) her recommendations as to an employee's change of status were given particular weight by her store managers. Plaintiff's sole contention is that it is a question for a jury to decide whether management was her primary duty. Plaintiff's argument is without merit.

In order to qualify as a *bona fide* executive, *inter alia*, an employee's primary duty must be the "management of the enterprise . . . or of a customarily recognized department or subdivision thereof . . . ." Id. The term "primary duty" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id.; see also Mullins v. City of New York, 653 F.3d 104, 106-07 (2d Cir. 2011). Certain factors courts consider in determining the primary duty of an employee include, but are not limited to: (1) the relative importance of exempt duties compared with other types of duties; (2) the amount of time the employee spends performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and wages paid to subordinates who performed the same type of nonexempt work. 29 C.F.R. § 541.700(a).

Plaintiff relies on several cases to substantiate her claim that summary judgment here is inappropriate. See Indergit v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 32322 (S.D.N.Y. Mar. 31, 2010); Clougher v. Home Depot U.S.A., Inc., 696 F.Supp.2d 285 (E.D.N.Y. 2010); Rubery v. Buth-Na-Bodhaige, Inc., 470 F.Supp.2d 273 (W.D.N.Y. 2007). However, these cases are distinguishable from the present case. In each of these cases, the court determined that there were genuine issues of material fact regarding the employee's actual duties that precluded summary judgment. See Indergit, 2010 WL

1327242 at *6; Clougher, 696 F.Supp.2d at 291-92; Rubery, 470 F.Supp.2d at 277. Here, by contrast, there are no genuine issues of material fact as to the duties that Plaintiff performed. As indicated, Plaintiff has made no denials of Defendant's statement of material facts. Therefore, the Court may determine whether, based on the undisputed facts, Plaintiff's primary duty was management of the enterprise or a customarily recognized department or subdivision thereof making summary judgment appropriate.

    **1.    Determination of Holloway's Primary Duty**

        **a.    The Importance of Holloway's Exempt Duties**

One of the factors to consider in determining the primary duty of an employee is the relative importance of exempt duties compared with other types of duties. See 29 C.F.R. § 541.700(a). Plaintiff testified that she performed numerous management-type duties at each of the stores in which she worked. DSOF at ¶¶51-192. For example, she admits that she spent "considerable time" coaching and training both associates and department supervisors, DSOF at ¶199; Dkt. No. 169-2 at 5, examples of exempt duties. Holloway also testified, *inter alia*, that she: recommended changes to employee status which includes hiring, firing, and promotions; scheduled and directed the work of other employees; disciplined employees; managed the inventory; placed orders for certain products; and handled employee grievances, see DSOF at ¶¶51-192, more examples of her exempt duties. Further, the Camillus Store Manager found Plaintiff's principal value to the enterprise was that she was responsible for all customers and associates in the store. Dkt. No. 138-8 at ¶31; Dkt. No. 169-2 at 5. In addition, Plaintiff's former co-workers testified that she performed a variety of management tasks at

7

Home Depot.[4]  See Dkt. No. 138-8, 138-9. 138-10.  Still further, Plaintiff has not identified the amount, frequency, or nature of non-exempt duties that she performed.  Based on the totality of the uncontested facts, a reasonable fact finder could only conclude that Holloway's most important duties at Home Depot were managerial in nature.

### b.     Holloway's Time Spent Performing Exempt Work

Another factor to consider when determining the primary duty of an employee is the amount of time the employee spends performing exempt work.  29 C.F.R. § 541.700(a).   Holloway admits to spending between 64 percent and 84 percent of her time each week performing managerial tasks. DSOF ¶¶193-201;  Def.'s  Br. (ECF No. 138-1) at 18.   In this regard, Holloway testified to spending the following time during her scheduled 55 hour workweek:

-Two to three hours per day (10-15 hrs. per week) walking the store with the store manager and the department supervisors;

-Two hours per week writing work lists;

- One to two hours per week attending or conducting various meetings with the store manager, department supervisors and associates in her departments;

- Two to three hours per day (10-15 hrs. per week) addressing customer issues;

- Two hours per day (10 hrs. per week) approving merchandise orders;

- Thirty minutes a day reviewing reports (2.5 hrs. per week);

- One or more hours writing or reviewing performance reviews each quarter;

---

[4]Operations Assistant Store Manager Janaski, who worked with Plaintiff at the Cicero store, provided in her Declaration: "When Holloway worked for the Cicero store as a MASM, I viewed her responsibilities for managing her merchandising departments to be critical to the success of the store.  If Holloway did not hold her department supervisors and associates accountable for the tasks that she directed or expected them to complete on a daily basis . . . her departments and the store as a whole would likely have lost sales."  Dkt. No. 138-9 at ¶10.

8

- Considerable time on a daily basis coaching and training department supervisors and associates; and

- Part of each day talking to her department supervisors about the operation of the departments.

DSOF ¶¶191-201.

Plaintiff further admits spending time writing and adjusting work schedules; delegating assignments; enforcing labor hours; holding department supervisors and associates accountable for their performance; approving overtime, price changes and shrink plans; disciplining department supervisors and sales associates; resolving employee grievances and customer complaints; enforcing legal and safety compliance; verifying deposits; and working alongside sales associates teaching them how to merchandise products. DSOF ¶¶71-78, 81-82, 86-87, 89, 97, 100-09, 112-13, 124, 129-47, 148-64, 166, 189-90.

Moreover, Holloway has not identified any nonexempt duties she performed which would require a fact finder to allocate time spent between exempt and non-exempt activities. Given the uncontested record, a reasonable fact finder could only conclude that Plaintiff spent the majority of her time performing managerial functions.

### c. Holloway's Relative Freedom From Direct Supervision

Another factor to consider when determining an employee's primary duty is the employee's relative freedom from direct supervision. 29 C.F.R. § 541.700(a). Plaintiff argues that even though she performed managerial tasks, she was not exempt because she could not complete those tasks without approval from her superiors. Dkt. No. 169-2 at 6. For instance, Holloway argues that while she "definitely recommended to the store manager about terminations, promotions and demotions[]," and that sometimes her recommendations were accepted by store management, DSOF at ¶64, "if a

9

significant management decision had to be made, such as whether an employee should be hired or fired, [she] needed approval from her store manager."

However, even where a manager's discretion is limited by upper management, the manager may still be considered an exempt employee. See Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982) (assistant managers were considered exempt employees under the FLSA even where their exercise of discretion was "circumscribed by prior instruction . . . ."); Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 507 (6th Cir. 2007) (stating that an employee's relative freedom from supervision "does not demand complete freedom from supervision, such that she is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry."); Yesmin v. Rite Aid of New York, Inc., 2012 U.S. Dist. LEXIS 127655, at *18 (E.D.N.Y. Sept. 6, 2012)("The fact that plaintiff was also supervised by the store manager, who was the highest ranked employee in the store, does not diminish [the plaintiff's] management of the other employees and the operation of the store."). Thus, even assuming that Plaintiff did not have final authority in matters such as hiring and firing, this fact is of no moment because "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105. Plaintiff's responsibility here is consistent with being a *bona fide* executive because, for example, her recommendations regarding employees' changes of status were given particular weight by her superiors. 29 C.F.R. § 541.100. Simply because Holloway did not have final supervisory authority as to certain management duties, this "does not take [her] out of realm of being a manager in the organization." Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, at *44 (E.D.N.Y. Mar. 29,

2011); see also 29 C.F.R. § 541.105. Given the uncontested record in this case, a reasonable fact finder could only conclude that Holloway was relatively free from direct supervision in the performance of the array of her managerial duties.

####          d.          Holloway's Wages Were Greater Than Wages Earned by Subordinates

The final factor to consider when determining an employee's primary duty is "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Plaintiff contends that if her salary is reduced to an hourly wage by dividing it by her weekly hours, she was not paid substantially more than her subordinates. However, courts have rejected engaging in "mathematical gymnastics" by dividing a manager's weekly salary by the number of hours worked each week to determine an hourly wage, and instead compare "the manager's weekly salary with the highest possible non-exempt weekly wage . . . ." Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1278-79 (S.D. Fla. 2004). Plaintiff's weekly salary is greater than the highest non-exempt weekly wage of her subordinates.

Moreover, even accepting Plaintiff's hypothetical hourly pay rate, there is a disparity in Plaintiff's compensation compared to her subordinates. In April 2005, Plaintiff earned $1,007.92 weekly.[5] Assuming Plaintiff worked 60 hours per week, she would have earned approximately $16.80 per hour. If Plaintiff worked 57 hours per week, her hourly rate would be approximately $17.68 per hour. If she worked 55 hours per week, the hourly rate would be approximately $18.36 per hour. According to Defendant's uncontested Statement of Material Facts, the mid-range hourly rates for sales associates and department supervisors where Plaintiff worked were $10.98 and $15.37, respectively.

---

[5] This calculation is based on Holloway's annual salary in April 2005 ($47,300), plus the $5,112 bonus that was awarded her that year. DSOF at ¶212.

11

DSOF at ¶215.  Thus, Plaintiff was paid more than the employees she supervised.  Moreover, Holloway received stock options that were not available to non-exempt employees.  DSOF at ¶204-213.  Based on these calculations as well as the stock options, a reasonable fact finder could only conclude that Plaintiff's wages were greater than those earned by her subordinates.

### e. **Conclusion - Primary Duty**

Based on the above factors, a reasonable fact finder could only conclude that Plaintiff's primary duty was management.  See Luksza v. TJX Cos., 2014 U.S. Dist. LEXIS 10813, at *13-14 (D. Nev. Jan. 28, 2014) (finding the plaintiffs' primary duty was management where their own description of their job activities indicated the plaintiffs' responsibilities consisted of directing the work of employees, handling employee concerns, disciplining employees, planning their work, and providing for their safety and security).  Thus, Plaintiff was properly classified as a *bona fide* executive exempt from the overtime compensation requirements of the FLSA and the NYLL.

## V. CONCLUSION

For the reasons set forth above, Defendant Home Depot's motion for summary judgment [Dkt. # 138] is **GRANTED**, and Plaintiff Christin Holloway's claims are **DISMISSED**.

**IT IS SO ORDERED.**

Dated:  May 5, 2014

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge