**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**ARTHUR A. AMASH**, *et al.*,

                                  **Plaintiffs,**

    v.                                                                     1:12-cv-837

**HOME DEPOT U.S.A., INC.,**

                                  **Defendant.**

---

**THOMAS J. McAVOY,
Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiffs commenced this action asserting claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), Article 19, § 650 *et seq.* See 2nd Am. Compl., dkt. # 43. Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") moves for summary judgment dismissing the claims brought by Plaintiff Sheryl Glickman ("Glickman" or "Plaintiff"). See Mot. dkt. # 139. For the reasons that follow, the motion is granted.

**II.    BACKGROUND**

    **a.    Procedural**

Glickman is a former Merchandising Assistant Store Manager ("MASM") for Home Depot who had joined a FLSA conditional certified collective action entitled Aquilino v. Home Depot, Inc., Civil Action No. 04-cv-4100, filed against Home Depot in the United States District Court for the District of New Jersey on December 21, 2006 ("Aquilino action"). See Defendant's Statement of

Material Facts Not in Dispute in Support of its Motion for Summary Judgment ("DSOF"), at ¶¶10-11. The Aquilino plaintiffs, including Glickman, alleged that they were misclassified as exempt employees by Home Depot under the overtime requirements of the FLSA, and sought overtime compensation. See DSOF at ¶¶8-9.

On February 15, 2011, the District Court of New Jersey granted Home Depot's motion to decertify the nationwide FLSA collective action. Aquilino, 2011 WL 564039, at *11 (ECF Nos. 341 and 347 in D.N.J. 04-cv-4100). After decertification of the collective action, by Order dated May 2, 2011, the District of New Jersey dismissed the opt-in plaintiffs without prejudice. Aquilino, 2011 WL 564039, at *1, (ECF No. 353 in D.N.J. 04-cv-4100); see Aquilino v. Home Depot. U.S.A., Inc., No. 06-cv-4100 (PGS) (D.N.J. May 2, 2011) (ECF No. 353 in D.N.J. 04-cv-4100).

In June 2011, Glickman joined with other opt-in plaintiffs, filing an action in the United States District Court for the District of Connecticut, alleging violation of the FLSA and various state laws. See Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 262 (D. Conn. 2012). The Costello plaintiffs alleged violations of the FLSA and the wage and hour laws of New Hampshire, New York, and Vermont. Id. at 261. On January 10, 2012, Home Depot filed a motion in the Costello action, pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), to sever the plaintiffs' claims into seven separate actions and to transfer six of those actions to districts in other states, including New York. See id. (ECF No. 55 in D. Conn. 11-cv-0953). On April 10, 2012, the Costello Court granted Home Depot's motion. Id. at 271 (ECF No. 72 in D. Conn. 11-cv-0953).

In April and May 2012, the claims of Glickman and other New York plaintiffs were transferred to the District Court for the Northern District of New York. See Order of Transfer, filed April 30, 2012, (ECF No. 77 in D. Conn. 11-cv-0953), and Amended Order of Transfer, filed May 2, 2012 (ECF

2

No. 79 in D. Conn. 11-cv-0953). Discovery in this action closed on December 20, 2013. See ECF No. 95.

  b.  **Factual**[1]

Home Depot operates large warehouse-style retail stores that sell home improvement products and services. DSOF at ¶25. Each store is managed by a Store Manager and up to seven Assistant Store Managers ("ASMs"), including MASMs, who are the second highest ranking employees, subordinate only to the store manager. Id. at ¶26.

MASMs supervise from one to eleven merchandising departments, to wit: Lumber, Building Materials, Flooring, Paint, Hardware, Plumbing, Electrical, Garden, Kitchen & Bath, Millwork, and Décor. DSOF at ¶¶25-26. Each merchandising department is staffed by sales associates and a department supervisor. Id. at ¶27. MASMs supervise the department supervisors and associates assigned to the merchandising departments for which they are responsible. Id.

According to the Sales Assistant Store Manager Job Description that applies to MASMs, it is Home Depot's expectation that, *inter alia*, Assistant Store Managers:

> work with the Store Manager to develop strategies and objectives to drive sales and profitability. They provide leadership to Associates so that these strategies and objectives are executed successfully. Sales ASMs must analyze trends, solve problems, and develop themselves and their Associates in order to maximize contribution to store success.

Id. at ¶40. Other responsibilities include: "[r]ecruiting, interviewing applicants and making recommendations to the Store Manager about hiring open positions," as well as "making recommendations to the Store Manager about terminations, promotions, demotions, new Associates

---

[1] Glickman's response to Home Depot's Statement of Material Facts Not in Dispute admits that all facts contained therein are true. See Dkt. # 169, at ¶4 ("Plaintiff makes no denials of the several paragraphs of Home Depot's Statement of Material Facts Not in Dispute.").

3

rate of pay and Associates performance based pay increases." Id. at ¶¶42, 49.

Between February 21, 2006 and March 18, 2006, Glickman was assigned as a MASM to Store 1266 located in Poughkeepsie, New York ("Poughkeepsie store"). Id. at ¶29. The Poughkeepsie store was staffed with a store manager, three ASMs, including Glickman, and approximately 155-175 non-exempt hourly employees. Id. at ¶34; Store Manager Passerelli Decl. at ¶6; Brady Decl. As a MASM in the Poughkeepsie store, Glickman supervised three merchandising departments: Millwork, Lumber and Building Materials and at least two of those department supervisors reported directly to her. DSOF at ¶¶35-36. Glickman was also responsible for the associates working in her assigned departments. Id. at ¶36.

During the month Glickman worked as the Poughkeepsie store's MASM, she spent approximately 20 of her 55 hour work week acting as the Manager on Duty ("Mod"), and managing the entire store in the store manager's absence. Id. at ¶¶37, 91. In addition to store-wide responsibility, Glickman also recommended the starting hourly rate for new hires, participated in interviewing sales associates for promotion to department supervisor, as well as took part in a round table discussion with other salaried members of the management team in order to identify candidates for promotion considerations. Id. at ¶¶45-46, 51.

As a major responsibility of the MASM job description, Glickman spent a considerable amount of her time "[c]oaching, training and developing Associates, ... both informal[ly] (e.g. on-floor coaching) and formal[ly] (e.g. written evaluations)." See Sales Assistant Store Manger Job Description; DSOF at ¶55. Additionally, Glickman was responsible for preparing performance reviews for her department supervisors and approving performance reviews for associates prepared by department supervisors. DSOF at ¶52. Glickman also had the authority to discipline associates

4

working within the Poughkeepsie store, and once terminated a sales associate because of attendance problems. Id. at ¶¶52-54. According to Glickman's former Store Manager, Chantel Parserelli, Glickman "also had the authority to commend good job performance with a merit badge (e.g. a monetary award) and to select ... employee of the month." See Store Manager Passerrelli Decl. at ¶10; DSOF at ¶40.

On March 18, 2006 Glickman's employment was terminated due to providing poor customer service. Id. at ¶29.

## III. STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

## IV. DISCUSSION

Under both the FLSA and NYLL, there are statutory exemptions from overtime compensation requirements for employees who are classified as *bona fide* executives. See 29 U.S.C. § 213(a)(1);

5

NYLL Article 19 § 651(5)(c). An "employee employed in a *bona fide* executive capacity" is defined as any employee:

> (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[2]

Plaintiff concedes that she satisfied three of the four prongs of the *bone fide* executive exemption contained in 29 C.F.R. § 541.100 by not contesting that: (1) her salary payments met the minimum requirements under both the FLSA and NYLL; (2) she customarily and regularly directed the work of two or more other employees; and (3) her recommendations as to an employee's change of status were given particular weight by her store managers. Plaintiff solely contends that whether management was her primary duty should be a question for the jury to decide. Plaintiff's argument is without merit.

In order to qualify as a *bona fide* executive, *inter alia*, an employee's primary duty must be the "management of the enterprise . . . or of a customarily recognized department or subdivision thereof . . . ." Id. The term "primary duty" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id.; see also Mullins v. City of New York, 653 F.3d 104, 106-07 (2d Cir. 2011).

---

[2]With the exception of the required minimum salary, New York's Codes, Rules and Regulations mirror the United States Department of Labor's definition of an "executive" employee. See 12 N.Y.C.R.R. § 142-2.14(c)(4)(i)(a)-(e).

Certain factors courts consider in determining the primary duty of an employee include, but are not limited to: (1) the relative importance of exempt duties compared with other types of duties; (2) the amount of time the employee spends performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and wages paid to subordinates who performed the same type of nonexempt work. 29 C.F.R. § 541.700(a).

Plaintiff relies on several cases to substantiate her claim that summary judgment here is inappropriate. See Indergit v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 32322 (S.D.N.Y. Mar. 31, 2010); Clougher v. Home Depot U.S.A., Inc., 696 F. Supp.2d 285 (E.D.N.Y. 2010); Rubery v. Buth-Na-Bodhaige, Inc., 470 F. Supp.2d 273 (W.D.N.Y. 2007). However, these cases are distinguishable from the present case. In each of these cases, the court determined that there were genuine issues of material fact regarding the employee's actual duties that precluded summary judgment. See Indergit, 2010 WL 1327242 at *6; Clougher, 696 F. Supp.2d at 291-92; Rubery, 470 F. Supp.2d at 277. Here, by contrast, there are no genuine issues of material fact as to the duties that Plaintiff performed. As indicated, Plaintiff has made no denials to Defendant's Statement of Material Facts. Therefore, the Court may determine whether, based on the undisputed facts, Plaintiff's primary duty was management of the enterprise or a customarily recognized department or subdivision thereof making summary judgment appropriate.

  **1.  Determination of Glickman's Primary Duty**

    **a.  The Importance of Glickman's Exempt Duties**

One of the factors to consider in determining the primary duty of an employee is the relative importance of exempt duties compared with other types of duties. See 29 C.F.R. § 541.700(a). Plaintiff testified that she performed numerous managerial duties during her month as a MASM at the

7

Poughkeepsie store. DSOF at ¶¶28-96. For example, she attests that she spent considerable time each week as the store's MOD during which she was responsible for managing the entire store in the Store Manager's absence. Id. at 90. When acting as the MOD, she had the authority to direct the work of all of the associates within the store and was equally responsible for any and all customer complaints. See. Store Manger Passerelli Decl. at ¶17; DSOF at ¶¶91-92. In her capacity as MASM, Glickman also devoted time to coaching and training both associates and department supervisors on a daily basis. DSOF at ¶¶55-56. She "was always" monitoring the associates in order to provide feedback as well as identifying candidates for promotions. Id. at ¶59. In addition to training and supervising, Glickman also testified, *inter alia*, that she: recommended changes regarding employee status which includes hiring, firing, and promotions; scheduled and directed the work of other employees; disciplined employees; managed the inventory; approved inventory orders; and managed the store's financial performance. See DSOF at ¶¶28-96. Further, the Poughkeepsie Store Manager stated she relied on Glickman not only in her capacity as a MASM, but in her "store-wide," responsibility, particularly when acting as MOD. DSOF at ¶¶38-39.

Plaintiff's brief posits that it has not been shown that her duties were critical to the store's success and argues that Glickman's manager's testimony does not alone remove any doubt as to the importance of her duties. Pl. Mol at 5 (dkt. No. 167). However, based upon the undisputed record there is no doubt that Plaintiff's principal value to the enterprise was that she was responsible for at least three departments as the MASM, and at times was responsible for all customers and associates in the store when acting as MOD. DSOF at ¶¶37-39. Plaintiff has also failed to specifically contest any of the above assertions concerning her responsibilities as MASM. Further, she has not identified the amount, frequency, or nature of any non-exempt duties that she performed. Based on the totality of the

8

uncontested facts, a reasonable fact finder could only conclude that Glickman's most important duties at Home Depot were managerial in nature.

### b. Glickman's Time Spent Performing Exempt Work

Another factor to consider when determining the primary duty of an employee is the amount of time the employee spends performing exempt work. 29 C.F.R. § 541.700(a). Glickman admits to spending around 90 percent of her time each week performing management tasks. DSOF ¶95; ECF No. 167-2; Pl. Mol at 3 (dkt. No. 167). In this regard, Glickman testified to spending the following time during her scheduled 55 hour workweek:

- Five hours per day (20 hrs. per week) as the MOD;

- Five hours per week walking the store by herself, with her store manager, and with her department supervisors;

- Two hours per week reviewing and working on scheduling issues;

- Two to three hours per day (10-15 hrs. per week) providing on-the-floor training;

- One hour per day (5 hrs. per week) handling customer complaints;

- Forty-five minutes a week providing classroom training;

- Forty minutes a day (3 hrs. 20 min. per week) writing work lists and assigning work;

- Fifteen minutes a day reviewing store reports (1 hr. 15 min. per week);

- Forty-five minutes a month on discipline issues (~11 minutes per week);

- Ten minutes a day reviewing and approving orders for merchandise;

DSOF ¶¶95-96.

Plaintiff further admits spending time training and coaching associates "as much as she could" each day; supervising department supervisors and associates; observing the associates and providing

9

feedback; training department supervisors and sales associates in her departments; directing the work of department supervisors and sales associates by delegating and assigning tasks to them; following up on delegated or assigned tasks to ensure completion; holding department supervisors and associates accountable for their performance; approving overtime, price changes and shrink plans; disciplining department supervisors and sales associates; resolving customer complaints; managing inventory, ordering and the store's financial performance; writing work lists and performance reviews; and enforcing legal and safety compliance. DSOF ¶¶28-96.

Moreover, Glickman has not identified a single nonexempt duty she performed which would require a fact finder to allocate time spent between exempt and non-exempt activities. Given the uncontested record, a reasonable fact finder could only conclude that Plaintiff spent the majority of her time performing managerial functions.

### c. Glickman's Relative Freedom From Direct Supervision

Another factor to consider when determining an employee's primary duty is the employee's relative freedom from direct supervision. 29 C.F.R. § 541.700(a). Plaintiff argues that even though she performed some managerial tasks, she was not exempt because she could not complete those tasks without approval from her superiors. Pl. MoI at 6 (dkt. No. 167). For instance, Glickman argues that while she "definitely recommended to the store manager about terminations, promotions and demotions[]," and that sometimes her recommendations were accepted by store management, DSOF at ¶64, "if a significant management decision had to be made, such as whether an employee should be hired or fired, [she] needed approval from her store manager." Pl. MoI at 6 (dkt. No. 167).

However, even where a manager's discretion is limited by upper management, the manager may still be considered an exempt employee. See Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d

Cir. 1982) (assistant managers were considered exempt employees under the FLSA even where their exercise of discretion was "circumscribed by prior instruction . . . ."); Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 507 (6th Cir. 2007) (stating that an employee's relative freedom from supervision "does not demand complete freedom from supervision, such that she is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry."); Yesmin v. Rite Aid of New York, Inc., 2012 U.S. Dist. LEXIS 127655, at *18 (E.D.N.Y. Sept. 6, 2012)("The fact that plaintiff was also supervised by the store manager, who was the highest ranked employee in the store, does not diminish [the plaintiff's] management of the other employees and the operation of the store."). Thus, even assuming that Plaintiff did not have final authority in matters such as hiring, this fact carries no weight because "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105. Plaintiff's responsibility here is consistent with being a *bona fide* executive because, for example, her recommendations regarding employees' changes of status were given particular weight by her superiors. See DSOF at ¶¶46-54; 29 C.F.R. § 541.100. In addition, Glickman was charged with the authority to discipline associates, including termination when appropriate and Glickman testified that on one occasion she did terminate an associate for attendance problems. DSOF at ¶¶53-54. Simply because Glickman did not have final supervisory authority as to specific management duties, this "does not take [her] out of realm of being a manager in the organization." Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, at *44 (E.D.N.Y. Mar. 29, 2011); see also 29 C.F.R. § 541.105. Given the uncontested record in this case, a reasonable fact finder could only conclude that Glickman was

11

relatively free from direct supervision in the performance of the array of her managerial duties.

### d. Glickman's Wages Were Greater Than Wages Earned by Subordinates

The final factor to consider when determining an employee's primary duty is "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Plaintiff contends that if her salary is reduced to an hourly wage by dividing it by her weekly hours, she was not paid substantially more than her subordinates. See Pl. Mol at 6 (dkt. No. 167). However, and in contravention to Plaintiff's assertions, courts have rejected engaging in "mathematical gymnastics" by dividing a manager's weekly salary by the number of hours worked each week to determine an hourly wage, and instead compare "the manager's weekly salary with the highest possible non-exempt weekly wage . . . ." Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1278-79 (S.D. Fla. 2004). Plaintiff's weekly salary is greater than the highest non-exempt weekly wage of her subordinates.

Moreover, even accepting Plaintiff's hypothetical hourly pay rate, there is a disparity in Plaintiff's compensation compared to her subordinates. Between February and March 2006, Plaintiff earned $985.57 weekly.[3] Assuming Plaintiff worked 55 hours per week, the hourly rate would be approximately $17.92 per hour. According to Defendant's uncontested Statement of Material Facts, the mid-range hourly rates for sales associates and department supervisors where Plaintiff worked were $12.64 and $16.97, respectively. DSOF at ¶101. Thus, Plaintiff was paid more than the employees she supervised. Furthermore, Glickman was entitled to stock options and a monetary bonus based upon the financial success of her store and her own individual performance, both of which were not available

---

[3]This calculation is based on Glickman's annual salary of $51,250.00 in 2006 after she was promoted to MASM. DSOF at ¶99.

to non-exempt employees. DSOF at ¶97. Based on these calculations as well as the stock options and possible bonus, a reasonable fact finder could only conclude that Plaintiff's wages were greater than those earned by her subordinates.

### e. Conclusion - Primary Duty

Based on the above factors, a reasonable fact finder could only conclude that Plaintiff's primary duty was management. See Luksza v. TJX Cos., 2014 U.S. Dist. LEXIS 10813, at *13-14 (D. Nev. Jan. 28, 2014) (finding the plaintiffs' primary duty was management where their own description of their job activities indicated the plaintiffs' responsibilities consisted of directing the work of employees, handling employee concerns, disciplining employees, planning their work, and providing for their safety and security). Thus, Plaintiff was properly classified as a *bona fide* executive exempt from the overtime compensation requirements of the FLSA and NYLL.

## V. CONCLUSION

For the reasons set forth above, Defendant Home Depot's motion for summary judgment [Dkt. # 139] is **GRANTED**, and Plaintiff Sheryl Glickman's claims are **DISMISSED**.

**IT IS SO ORDERED.**

Dated: June 3, 2014

Thomas J. McAvoy
Senior, U.S. District Judge