**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ARTHUR A. AMASH,** *et al.*,

                       **Plaintiffs,**

v.                                               1:12-cv-837

**HOME DEPOT U.S.A., INC.,**

                       **Defendant.**

---

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

Plaintiffs commenced this action asserting claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), Article 19, § 650 *et seq.* See 2nd Am. Compl., dkt. # 43. Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") moves for summary judgment dismissing the claims brought by Plaintiff Jeffrey A. Repp ("Repp" or "Plaintiff"). See Mot. dkt. # 140. For the reasons that follow, the motion is granted.

### II. BACKGROUND

    **a. Procedural**

Repp is a former Merchandising Assistant Store Manager ("MASM") for Home Depot who had joined a FLSA conditional certified collective action entitled Aquilino v. Home Depot, Inc., Civil Action No. 04-cv-4100, filed against Home Depot in the United States District Court for the District of New Jersey in 2006 ("Aquilino action"). See Defendant's Statement of Material Facts Not in Dispute in Support of its Motion for Summary Judgment ("DSOF"), at ¶¶7-8. The Aquilino plaintiffs,

including Repp, alleged that they were misclassified as exempt employees by Home Depot under the overtime requirements of the FLSA, and sought overtime compensation. See DSOF at ¶¶8-9.

On February 15, 2011, the District Court of New Jersey granted Home Depot's motion to decertify the nationwide FLSA collective action. Aquilino, 2011 WL 564039, at *11 (ECF Nos. 341 and 347 in D.N.J. 04-cv-4100); DSOF at ¶10. After decertification of the collective action, by Order dated May 2, 2011, the District of New Jersey dismissed the opt-in plaintiffs without prejudice. Aquilino, 2011 WL 564039, at *1, (ECF No. 353 in D.N.J. 04-cv-4100); see Aquilino v. Home Depot. U.S.A., Inc., No. 06-cv-4100 (PGS) (D.N.J. May 2, 2011) (ECF No. 353 in D.N.J. 04-cv-4100); DSOF at ¶11.

In June 2011, Repp joined with other opt-in plaintiffs, filing an action in the United States District Court for the District of Connecticut, alleging violation of the FLSA and various state laws. See Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 262 (D. Conn. 2012). The Costello plaintiffs alleged violations of the FLSA and the wage and hour laws of New Hampshire, New York, and Vermont. Id. at 261. On January 10, 2012, Home Depot filed a motion in the Costello action, pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), to sever the plaintiffs' claims into seven separate actions and to transfer six of those actions to districts in other states, including New York. See id. (ECF No. 55 in D. Conn. 11-cv-0953). On April 10, 2012, the Costello Court granted Home Depot's motion. Id. at 271 (ECF No. 72 in D. Conn. 11-cv-0953).

In April and May 2012, the claims of Repp and other New York plaintiffs were transferred to the District Court for the Northern District of New York. See Order of Transfer, filed April 30, 2012, (ECF No. 77 in D. Conn. 11-cv-0953), and Amended Order of Transfer, filed May 2, 2012 (ECF No. 79 in D. Conn. 11-cv-0953). Discovery in this action closed on December 20, 2013. See ECF No. 95.

b.  **Factual**[1]

Home Depot operates large warehouse-style retail stores that sell home improvement products and services.  DSOF at ¶23.  Each store is managed by a Store Manager and up to seven Assistant Store Managers ("ASMs"), including MASMs, who are the second highest ranking employees, subordinate only to the store manager.  Id. at ¶24.

MASMs supervise from one to eleven merchandising departments, to wit: Lumber, Building Materials, Flooring, Paint, Hardware, Plumbing, Electrical, Garden, Kitchen & Bath, Millwork, and Décor.  DSOF at ¶¶25-26.  Each merchandising department is staffed by sales associates and a department supervisor.  Id. at ¶27.  MASMs supervise the department supervisors and associates assigned to the merchandising departments for which they are responsible.  Id.

According to the Sales Assistant Store Manager Job Description that applies to MASMs, it is Home Depot's expectation that, *inter alia*, Assistant Store Managers:

> work with the Store Manager to develop strategies and objectives to drive sales and profitability.  They provide leadership to Associates so that these strategies and objectives are executed successfully.  Sales ASMs must analyze trends, solve problems, and develop themselves and their Associates in order to maximize contribution to store success.

Id. at ¶40. Other responsibilities include: "[r]ecruiting, interviewing applicants and making recommendations to the Store Manager about hiring open positions," as well as "making recommendations to the Store Manager about terminations, promotions, demotions, new Associates rate of pay and Associates performance based pay increases."  Id. at ¶64.

Repp was employed by Home Depot from October 2000 until his resignation September 9,

---

[1]Repp's response to Home Depot's Statement of Material Facts Not in Dispute admits that all facts contained therein are true.  See Dkt. # 165, at ¶4 ("Plaintiff makes no denials of the several paragraphs of Home Depot's Statement of Material Facts Not in Dispute.").

3

2009. Id. at ¶28. On January 27, 2004 Repp was promoted to MASM, a position he held until his employment ended in 2009. Id. at ¶29. Repp was assigned as a MASM to Store 6165 located in Ithaca, New York ("Ithaca store"). Id. at ¶31. The Ithaca store was staffed with a store manager, three ASMs, including Repp, and approximately 85-120 non-exempt hourly employees depending on the season. DSOF at ¶32; Store Manager Holes Decl. at ¶¶10, 12. As a MASM in the Ithaca store, Repp supervised eight merchandising departments: Lumber, Building Materials, Paint, Electrical, Seasonal, part of Floor and Wall, part of Millwork, and part of Kitchen and bath. DSOF at ¶¶34. According to Repp, two of those department supervisors reported directly to him. Id. at ¶35. Shortly thereafter, Repp transferred to Store 6174 in Watertown, New York ("Watertown store") to work as MASM for a month, in order to help the store finish preparing for its opening. Id. at ¶¶36, 118. Repp testified that he "came in and took the reins," and was sent to that store to "[f]ix it, speed it up and get it open." Id. at ¶118. Despite being nearly 3 weeks behind when he arrived, with Repp's assistance, the store opened on time. Repp was also responsible for the associates working in him assigned departments. DSOF at ¶36; see also Tr. At 209-10.

In late February, 2004 Repp was transferred to Store 6173 in Oneonta, New York ("Oneonta store"), where as MASM, he was part of the management team that opened the Oneonta store. DSOF at ¶¶37-38. Repp spent approximately 18 months working at the Oneonta store. Id. at 40. The Oneonta Store was staffed with a store manager, three ASMs, including Repp, and approximately 80-100 non-exempt hourly employees. Id. at ¶39. As a MASM in the Oneonta store, Repp supervised six merchandising departments: Paint, Hardware, Seasonal, Lumber, and Building Materials and Electrical, and six or seven department supervisors reported directly to him. DSOF at ¶¶40-41.

In late 2005, Repp transferred to Store 1224 in Binghamton, New York ("Binghamton store"),

4

which is considered a high volume store and was staffed by one store manager, five ASMs, including Repp, and approximately 150-200 hourly non-exempt employees, depending on the season. Id. at ¶¶42-23. At the Binghamton store, Repp managed six departments: Lumber, Building Materials, Paint, Hardware, Electrical, and Seasonal, and six department supervisors reported directly to him. Id. at ¶44.

In early 2009, Repp transferred back to the Ithaca store, where he remained until the end of his employment. Id. at ¶¶46, 49. At the Ithaca store, Repp, as MASM, was assigned nine merchandising departments: Lumber, Building Materials, Paint, Hardware, Electrical, Seasonal, part of Floor and Wall, part of Millwork, and part of Kitchens and Bath, and nine department supervisors reported directly to him. Id. at ¶48.

During his years as MASM, Repp testified to performing all of the Major Tasks and Responsibilities set forth in the Sales Assistant Store Manager Job Description. See Tr. at 77-82; DSOF at ¶¶51-52. Specifically, Repp acted as the opening manager approximately 1-2 times per week and closing manager approximately twice a week at the Oneonta, Binghamton, and Ithaca stores. DSOF at ¶150. As the opening manger, Repp was the only salaried manager in the store from "a few hours, at minimum" to "half the day." Id. at ¶151. At the Binghamton store, he was generally the only salaried manager for a "couple hours." Id. When opening manger, Repp was responsible for ensuring that the night crew had performed their own job, specifically in cleaning the store to ensure that it was ready for the customers as well as safe with "no slips trips, or falls" and "that the store [was] ready to go." Id. at ¶152. Repp would also walk the store to ensure the entire store was safe and secure, and then conducted a safety roll call to confirm the "store was safe and ready for business." Id. at ¶153.

When acting as the closing manger, he was the only salaried manager in the store for approximately two hours at the Oneonta, Binghamton and Ithaca stores. Id. at ¶154. Further, Repp, as

5

closing manager, walked the stores with the department supervisors in order to address any safety issues, "ma[de] sure doors are locked, set the perimeter alarms," brought "money back to the vault to verify, deposit," and "ma[de] sure things [were] ready for the next day." Id. at ¶¶155-56. Repp also had the authority to modify the schedule of department supervisors or associates, depending on the needs of the business, in case he needed any of them to work overnight. Id. at ¶157.

Whether the opening or closing manager, Repp was the only salaried manager in the store and as a result, Repp was designated as the Manager on Duty ("MOD"). DSOF at ¶158. Store Managers Schoettler and Holes both viewed the MOD responsibility as one of the ASMs most important managerial duties, especially because the opening and closing of the stores was among the duties which could not be performed by hourly non-exempt department supervisors and associates. See Store Manager Schoettler Decl. at. ¶¶ 32-33; Store Manager Holes Decl. at. ¶¶ 25, 30; DSOF at ¶¶158, 161.

At least a couple of times a month, Repp served as the MOD at all of the stores where he worked. DSOF at ¶159. Repp testified that when acting as a MOD he had store wide responsibility which included: taking care of any customer issues; walking the store, making sure store tasks were being performed properly; checking for store safety issues; adjusting the staffing levels at the cash registers; ensuring associates were working their schedules; verifying merchandise deliveries; and essentially being responsible for and running the entire store. Id. at ¶¶164-65. In addition to store-wide responsibility, Repp's responsibilities as MASM included: directing, delegating work to, and supervising department supervisors and associates; being involved in the hiring of staff by conducting interviews using a "structured interview guide," ranking candidates, and then making recommendations to the store manager about who should be hired; taking part in a round table discussion with other salaried members of the management team in order to identify candidates for promotion

6

considerations; recommending the termination of associates to the Store Manager; and a list of other managerial duties and responsibilities. See DSOF at ¶¶51-182. In addition, Repp, along with the other ASMs were given authority by Store Manager Holes (Binghamton store) to present a job offer if a candidate really stood out and the Store Manager was not available to conduct the final interview. DSOF at ¶63; Store Manager Holes Decl. at ¶ 31.

As a major responsibility of the MASM job description, Repp spent a considerable amount of his time "[c]oaching, training and developing Associates, . . . both informal[ly] (e.g. on-floor coaching) and formal[ly] (e.g. written evaluations [clinics, workshops, classes])." See Sales Assistant Store Manger Job Description; DSOF at ¶¶92-96 (Repp testified to spending 90% of his time on the sales floor teaching and that he walked his departments "non-stop" in order to "keep [his associates] on their toes," and to ensure the assigned tasks were completed). Additionally, Repp was responsible for preparing performance reviews for his department supervisors and approving performance reviews for associates prepared by department supervisors. DSOF at ¶¶52, 81, 86. Repp also had the authority to discipline associates, which he did at all the stores he worked at as a MASM, through oral counseling and by issuing written disciplinary notices. Id. at ¶¶98-99. Repp was given discretion with regards to coaching, counseling and disciplining any sales associates or department supervisor in the store for violating Home Depot's policies, procedures, and practices, and directed his department supervisors to "performance track" their own subordinate employees. DSOF at ¶¶101-02; Tr. at 175.

Just as with hiring, the Store Manager gave a certain amount of weight to Repp's recommendations when it came to termination. Id. at ¶¶56-59, 72-76. Similarly, Repp testified that he terminated an associate on the spot for violence in the workplace, without prior approval from the Store Manager or HR at the Binghamton store, and testified to having fired the department supervisor for

7

performance reasons at the Oneonta store, and that while MASM for the second time at the Ithaca store his recommendations for the termination of department supervisors were approved by the store manager. DSOF at ¶¶72-73, 75. In addition, all of Repp's Store Managers attest to following Repp's recommendations concerning hiring, promotions and firings. Id. at ¶¶53-63, 67-71, 76, 103-05. Repp also performed, *inter alia*, other duties, including: monitoring the financial performance of the store by daily reviews and analysis of store reports, inventory management; resolving employee grievances, ensuring compliance with legal and other policies; and many others duties. Id. at ¶¶126-150.

In September, 2009 Repp's employment ended following his resignation. Id. at ¶49.

### III. STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

### IV. DISCUSSION

Under both the FLSA and NYLL, there are statutory exemptions from overtime compensation

requirements for employees who are classified as *bona fide* executives. See 29 U.S.C. § 213(a)(1); NYLL Article 19 § 651(5)(c). An "employee employed in a *bona fide* executive capacity" is defined as any employee:

> (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[2]

Plaintiff concedes that he satisfied three of the four prongs of the *bone fide* executive exemption contained in 29 C.F.R. § 541.100 by not contesting that: (1) his salary payments met the minimum requirements under both the FLSA and NYLL; (2) he customarily and regularly directed the work of two or more othis employees; and (3) his recommendations as to an employee's change of status were given particular weight by his store managers. Plaintiff solely contends that whether management was his primary duty should be a question for the jury to decide. Plaintiff's argument is without merit.

In order to qualify as a *bona fide* executive, *inter alia*, an employee's primary duty must be the "management of the enterprise . . . or of a customarily recognized department or subdivision thereof . . . ." Id. The term "primary duty" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all facts in a particular case, with the major emphasis on the character of the employee's

---

[2]With the exception of the required minimum salary, New York's Codes, Rules and Regulations mirror the United States Department of Labor's definition of an "executive" employee. See 12 N.Y.C.R.R. § 142-2.14(c)(4)(i)(a)-(e).

9

job as a whole." Id.; see also Mullins v. City of New York, 653 F.3d 104, 106-07 (2d Cir. 2011). Certain factors courts consider in determining the primary duty of an employee include, but are not limited to: (1) the relative importance of exempt duties compared with other types of duties; (2) the amount of time the employee spends performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and wages paid to subordinates who performed the same type of nonexempt work. 29 C.F.R. § 541.700(a).

Plaintiff relies on several cases to substantiate his claim that summary judgment where is inappropriate. See Indergit v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 32322 (S.D.N.Y. Mar. 31, 2010); Cloughis v. Home Depot U.S.A., Inc., 696 F. Supp.2d 285 (E.D.N.Y. 2010); Rubery v. Buth-Na-Bodhaige, Inc., 470 F. Supp.2d 273 (W.D.N.Y. 2007). However, these cases are distinguishable from the present case. In each of these cases, the court determined that there were genuine issues of material fact regarding the employee's actual duties that precluded summary judgment. See Indergit, 2010 WL 1327242 at *6; Cloughis, 696 F. Supp.2d at 291-92; Rubery, 470 F. Supp.2d at 277. Here, by contrast, there are no genuine issues of material fact as to the duties that Plaintiff performed. As indicated, Plaintiff has made no denials to Defendant's Statement of Material Facts. Therefore, the Court may determine whether, based on the undisputed facts, Plaintiff's primary duty was management of the enterprise or a customarily recognized department or subdivision thereof making summary judgment appropriate.

1. **Determination of Repp's Primary Duty**

    a. **The Importance of Repp's Exempt Duties**

One of the factors to consider in determining the primary duty of an employee is the relative importance of exempt duties compared with other types of duties. See 29 C.F.R. § 541.700(a).

Plaintiff testified that he performed numerous managerial duties during his employment as a MASM. DSOF at ¶¶51-182. For example, he attests that at each store in which he worked he spent time each week acting as the closing manager, the opening manager, and as the MOD. Id. at ¶¶150-54, 162. In each of these roles, Repp was for a time the only salaried manager in the store and as such was responsible for managing the entire store. Id. at ¶¶152, 154, 158, 165. When acting as the MOD, he had the authority to direct the work of all of the associates within the store and was equally responsible for any and all customer complaints. Id. at ¶¶164-65. In his capacity as MASM, Repp was also "constantly" coaching and training both associates and department supervisors on a daily basis. Id. at ¶94. Repp testified to walking his departments "non-stop," in order to follow up with associates and "keep them on their toes," ensuring that assigned tasks were completed. Id. at ¶95. Even while working with his subordinates, Repp testified to simultaneously supervising and, in addition to the informal on-the-floor style training, Repp was a forklift trainer, and taught clinics and workshops. Id. at ¶96. He also monitored the associates in order to provide feedback as well as identifying candidates for promotions. Id. at ¶¶64-65. According to his discretion, Repp awarded "merit badges," which were worth $20.00 each, to associates to reward them for a "job well done." Id. at ¶89. In addition to training and supervising, Repp also recommended changes regarding employee status which includes hiring, firing, and promotions; scheduled and directed the work of other employees; disciplined employees; managed the inventory; approved inventory orders; and managed the store's financial performance. See DSOF at ¶¶51-182

Plaintiff's brief posits that the sum of the MASM responsibilities combined with what Repp actually performed demonstrate that his position was misclassified as exempt. Pl. Mol at 3 (dkt. No. 165). Plaintiff asserts that his primary duties consisted of non-managerial functions. However,

nowhere in the record is there supporting testimony or evidence for Plaintiff's assertion, or even a mention of any specific non-exempt duties Plaintiff performed. Further, as previously mentioned, Plaintiff's response to Defendant's Statement of Material Facts makes no denials whatsoever. Dkt. # 165, ¶4; see also n.1 *supra*.

      Therefore, based on the undisputed record, there is no doubt that Plaintiff's principle value was in his managerial duties. Such conclusions are corroborated by two of Repp's store managers and also two subordinates as well. According to Store Managers Schoettler and Holes, Repp's responsibilities when acting as opening or closing manager were some of his most important duties; especially because the managerial duties performed by Repp in this capacity could not be done by hourly, non-exempt department supervisors or associates. DSOF at ¶¶158-59, 161; see also Store Manager Schoettler Decl. at ¶ 32; Store Manager Holes Decl. at ¶ 30. Moreover, ASMs, like Repp were vital to the operations of the Binghamton and Ithaca stores because the store manager could not always manage the store alone, which are open seven days a week, in excess of 100,000 square feet each, employ 80 or more associates each and services thousands of customers each week. DSOF at ¶¶167-68; Store Manager Holes Decl. at ¶29. Department Supervisors Patrick Babcock and Melody Herman both confirm that Repp, while assigned to the Binghamton store, was their direct supervisor and that he coached and trained associates and department supervisor; duties which were important to the success of the store and included in the major tasks and responsibilities within the Sales Assistant Manager Job Description. DSOF at ¶180; see also Babcock Decl. at ¶ 10, 16; Herman Decl. at ¶ 7, 13.

      Similarly, based on the undisputed record, there is no doubt that Plaintiff's value to the enterprise was a result of his managerial discretion. For example, Store Manager Rob Sexton noted in Repp's March, 2007 performance evaluation that Repp had "successfully lead [sic] Lumber, Buidling

Materials, Paint, Hardware and Electrical with a combined $1.3M (7.6%) over plan and $1M (6.2%) growth v. 2005 . . . due to Jeff['s] candid leadership style." Id. at ¶139.

Plaintiff has also failed to specifically contest any of the above assertions concerning his responsibilities as MASM. Further, he has not identified the amount, frequency, or nature of any non-exempt duties that he performed. Based on the totality of the uncontested facts, a reasonable fact finder could only conclude that Repp's most important duties at Home Depot were managerial in nature.

### b. Repp's Time Spent Performing Exempt Work

Another factor to consider when determining the primary duty of an employee is the amount of time the employee spends performing exempt work. 29 C.F.R. § 541.700(a). As a MASM, Repp was scheduled to work 55 hours each week. Repp testified to spending, at one point, roughly 90% on his time on the floor where he simultaneously trained, supervised and worked with his subordinates. The actual number of hours worked were varied by several factors including the seasonal demand. Id. at ¶175. For example, the winter season tended to be a slower period of time. Id. In this regard, Repp testified to the following division of labor:

- 12-15 hours per week as the MOD or closing/opening Manager;

- 2 hours each week delegating or assigning work;

- 1-2 hours per week attending various types of meetings with his store manager, department supervisors, and departments;

- Conducting walks of his departments "non stop";

- "Constantly" on the floor talking to his department supervisors about the operation of the departments and reviewing departments' merchandise orders;

- "Always" supervising, coaching and training his department supervisors and associates on the sales floor;

- Holding weekly staff meetings where he reviewed department performance, including sales goals, shrink numbers, in-stock conditions and merchandising. At these meetings, Repp also directed and helped the department supervisors, and reset the departments for that week's sales promotions.

DSOF ¶¶150-69, 177-82. Plaintiff further admits to sometimes spending less that the normal 55 hours each week at work, and as MASM, sometimes working less than 40 hours per week. Id. at ¶¶173-74.

Repp testified to having a very hands-on management style, where he would instruct associates and then "show[] them how it's done." Id. at ¶122. Therefore, even when working on the floor, Repp did so in order to supervise, delegate and train. Id. at ¶93. Repp testified to taking those opportunities to train and that no matter what kind of work he was doing, he felt he was still supervising. Id. at ¶¶93-94. Repp's store managers expected him to delegate as much work as possible to his subordinates, and assign the more menial labor that needed to be done and then to ensure that the work was completed correctly. DSOF at ¶123; see also Store Manager Holes Decl. at ¶ 19.

Moreover, Repp has not identified a single nonexempt duty he performed which would require a fact finder to allocate time spent between exempt and non-exempt activities. Even assuming that Repp did in fact spend less than 50% of his timing managing, despite the lack of any evidence in the uncontested record, this would not change his exempt status. See 29 C.F.R. §§ 541.700(a), 541.106(b), 541.703 (Department of Labor regulations recognizing that multi-tasking, or the engaging in of both exempt and non-exempt duties simultaneously does not alter an employee's exempt status); see also Donovan v. Burger King Corp., 675 F.2d 516, 517, 520-21 (2d. Cir 1982) (Second Circuit discussed

exempt status of assistant managers who spent considerable amount of time performing same work as non-exempt hourly employees, but who simultaneously performed key managerial duties such as assigning tasks to hourly employees, handled customer complaints, ensuring assigned duties were performed, running cash checks, determining amounts of food to be prepared; all duties which ensured successful operation of the business).

Therefore, even if Repp had spent more than 50% of his time working on the floor with the associates, his time was still being spent acting concurrently as a manager to department supervisors, associates, and on occasion the entire store; it was his managerial duties which were of principle value to the store's success and not any purely manual and non-exempt duties Plaintiff performed. Given the uncontested record, a reasonable fact finder could only conclude that Plaintiff spent the majority of his time performing managerial functions.

### c. Repp's Relative Freedom From Direct Supervision

Another factor to consider when determining an employee's primary duty is the employee's relative freedom from direct supervision. 29 C.F.R. § 541.700(a). Plaintiff argues that even though he performed some managerial tasks, he was not exempt because he could not complete those tasks without approval from his superiors. Pl. MoI at 6 (dkt. No. 165). For instance, Repp argues that while he made recommendations to the store manager about hiring, firings and promotions, and that sometimes his recommendations were accepted by store management, he contends that "if a significant management decision had to be made, such as when an employee should be hired or fired, [he] needed approval from his store manager." Pl. MoI at 6 (dkt. No. 165); DSOF at ¶¶53-63, 67-71, 76, 103-05. Further, Plaintiff argues that he "reported directly to the store manager, who he was subordinate to." Pl. MoI at 6 (dkt. No. 165); see also Hill Decl. at ¶ 6; Schoettler Decl. at ¶ 6; DSOF at ¶¶53-63, 67-71, 76,

15

103-05.

However, even where a manager's discretion is limited by upper management, the manager may still be considered an exempt employee. See Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982) (assistant managers were considered exempt employees under the FLSA even when their exercise of discretion is "circumscribed by prior instruction . . . ."); Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 507 (6th Cir. 2007) (stating that an employee's relative freedom from supervision "does not demand complete freedom from supervision, such that he is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry."); Yesmin v. Rite Aid of New York, Inc., 2012 U.S. Dist. LEXIS 127655, at *18 (E.D.N.Y. Sept. 6, 2012)("The fact that plaintiff was also supervised by the store manager, who was the highest ranked employee in the store, does not diminish [the plaintiff's] management of the other employees and the operation of the store."). Thus, even assuming that Plaintiff did not have final authority in matters such as hiring, this fact carries littleweight because "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105. Plaintiff's responsibility here is consistent with being a *bona fide* executive because, for example, his recommendations regarding employees' changes of status were given particular weight by his superiors. See DSOF at ¶¶46-54; 29 C.F.R. § 541.100. In addition, Repp was charged with the authority to discipline associates, as well as given the authority to give an especially promising interview candidate a job offer if the store manager was not available to conduct the final interview. DSOF at ¶63, 97-105. Repp also testified to having terminated Department Supervisor Dan Card for

16

performance reasons while working at the Oneonta store and, while working at the Binghamton store, he also terminated an associate for violence in the workplace without approval from the Store Manager or Human Resources. Id. at ¶¶72-73. Further, Repp testified that a MASM had the authority to discuss raise amounts with hourly associates. Id. at ¶88. Simply because Repp did not have final supervisory authority as to specific management duties, this "'does not take [his] out of realm of being a manager in the organization.'" Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, at *13 (E.D.N.Y. Mar. 29, 2011), (quoting Gellhaus v. Wal-Mart Stores, Inc., No. 10–CV–123 (MAC), 2011 U.S. Dist. LEXIS 25582, at *27 (E.D.Tex. Mar. 10, 2011)); see Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, at *11, 13 (E.D.N.Y. Mar. 29, 2011) (sufficiently free from supervision factor satisfied where Plaintiff "had to use good judgement regularly" and "had to exercise discretion on a continuing basis throughout the day . . . ."); see also 29 C.F.R. § 541.105. Repp also used discretion in planning merchandise, sign placement, display and ensuring his departments were cross-merchandising products from other departments in order to maximize sales and profitability while making sure that customers had an easier time finding everything they might need without hunting throughout the entire store. DSOF at ¶¶130-32; see also Babcock Decl. at ¶ 13; Herman Decl. at ¶ 13 (Repp had discretion to adjust end-caps and wing-stacks to emphasize certain merchandise to improve sales). Repp also testified to being responsible for the Pro Desk department and its importance and financial success in the Ithaca store. DSOF at ¶140-41. Repp's involvement/leadership was credited by Store Manager Holes as being "instrumental" in developing the Pro desk, which is aimed at providing services for professionals who make up a major part of sales at the Ithaca store. Id.

Given the uncontested record in this case, a reasonable fact finder could only conclude that Repp was relatively free from direct supervision in the performance of the array of his managerial

17

duties.

### d. Repp's Wages Were Greater Than Wages Earned by Subordinates

The final factor to consider when determining an employee's primary duty is "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Plaintiff contends that if his salary is reduced to an hourly wage by dividing it by his weekly hours, he was not paid substantially more than his subordinates. See Pl. MoI at 6-7 (dkt. No. 165). However, and in contravention to Plaintiff's assertions, courts have rejected engaging in "mathematical gymnastics" by dividing a manager's weekly salary by the number of hours worked each week to determine an hourly wage, and instead compare "the manager's weekly salary with the highest possible non-exempt weekly wage . . . ." Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1278-79 (S.D. Fla. 2004). Plaintiff's weekly salary is greater than the highest non-exempt weekly wage of his subordinates.

Moreover, even accepting Plaintiff's hypothetical hourly pay rate, there is a disparity in Plaintiff's compensation compared to his subordinates. As previously mentioned, Repp testified that he normally worked no more than 55 hours a week, and there were some weeks he worked less than 55 hours. DSOF at ¶¶172-74. In April, 2007 Plaintiff earned $1,081.52 weekly.[3] Assuming Plaintiff worked 55 hours per week, the hourly rate would be approximately $19.66 per hour. According to

---

[3]This calculation is based on Repp's annual salary of $56,239.00 in 2007. DSOF at ¶193. This same year, 2007, Repp also earned a bonus of $16,720.21 and received 149 shares of restricted stock. Id. at 193-94. In April 2008, Repp's annual salary was $59,332.00 and he was awarded a bonus of $16,358.82 and 268 shares of restricted stock, and an additional bonus of $6,305.98 in September, 2008. Id. at ¶195-96. In April, and until his resignation in September, 2009, Repp's annual salary was $63,541.00 and he was awarded a bonus of $5,638.78 and 171 shares of restricted stock. Id. at ¶197-98. Repp also received similar raises, including monetary bonuses and restricted stock awards in 2004, 2005, and 2006 - all the years he was a MASM. Id. at ¶190-92.

18

Defendant's uncontested Statement of Material Facts, the mid-range hourly rates, between 2007-2009, for sales associates and department supervisors where Plaintiff worked were $11.48 and $15.98, respectively. Id. at ¶201. Thus, Plaintiff was paid more than the employees he supervised. Furthermore, Repp was entitled to stock options and a monetary bonus based upon the financial success of his store and his own individual performance, both of which he received every year that he worked as a MASM (see n.3, *supra*) and which were not available to non-exempt employees. Id. at ¶¶184, 187-88.[4] Also, as a MASM, Repp testified to understanding that his salary covered all the work he performed and he understood he would not receive overtime pay. Id. at ¶186. Based on these calculations as well as the stock options and possible bonus, a reasonable fact finder could only conclude that Plaintiff's wages were greater than those earned by his subordinates.

     e.     **Conclusion - Primary Duty**

Based on the above factors, a reasonable fact finder could only conclude that Plaintiff's primary duty was management. See Luksza v. TJX Cos., 2014 U.S. Dist. LEXIS 10813, at *13-14 (D. Nev. Jan. 28, 2014) (finding the plaintiffs' primary duty was management where their own description of their job activities indicated the plaintiffs' responsibilities consisted of directing the work of employees, handling employee concerns, disciplining employees, planning their work, and providing for their safety and security). Thus, Plaintiff was properly classified as a *bona fide* executive exempt from the overtime compensation requirements of the FLSA and NYLL.

---

[4] For example, as a Department Supervisor, Repp was not eligible for the stock options he received as a MASM and while he did receive bonuses as a department Supervisor, the amount was "'extremely different'" from what he received as a MASM. DSOF at ¶¶187-88; see also Tr. at 58-59, 60-61.

## V. CONCLUSION

For the reasons set forth above, Defendant Home Depot's motion for summary judgment [Dkt. # 140] is **GRANTED**, and Plaintiff Jeffrey A. Repp's claims are **DISMISSED**.

**IT IS SO ORDERED.**

Dated: June 11, 2014

Thomas J. McAvoy
Senior, U.S. District Judge