UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ARTHUR A. AMASH, *et al.*,

                      **Plaintiffs,**

  v.                                              1:12-cv-837

HOME DEPOT U.S.A., INC.,

                      **Defendant.**

---

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I.    INTRODUCTION

Plaintiffs commenced this action asserting claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), Article 19, § 650 *et seq.* See 2nd Am. Compl., dkt. # 43. Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") moves for summary judgment dismissing the claims brought by Plaintiff Richard A. Yingling ("Yingling" or "Plaintiff"). See Mot. dkt. # 151. For the reasons that follow, the motion is granted.

### II.    BACKGROUND

    **a.    Procedural**

Yingling is a former Merchandising Assistant Store Manager ("MASM") and Specialty Assistant Store Manager ("SASM") for Home Depot who had joined a FLSA conditional certified collective action entitled Aquilino v. Home Depot, Inc., Civil Action No. 04-cv-4100, filed against Home Depot in the United States District Court for the District of New Jersey on December 21, 2006

1

("Aquilino action"). See Defendant's Statement of Material Facts Not in Dispute in Support of its Motion for Summary Judgment ("DSOF"), at ¶¶8-9. The Aquilino plaintiffs, including Yingling, alleged that they were misclassified as exempt employees by Home Depot under the overtime requirements of the FLSA, and sought overtime compensation. See id.

On February 15, 2011, the District Court of New Jersey granted Home Depot's motion to decertify the nationwide FLSA collective action. Aquilino, 2011 WL 564039, at *11 (ECF Nos. 341 and 347 in D.N.J. 04-cv-4100). After decertification of the collective action, by Order dated May 2, 2011, the District of New Jersey dismissed the opt-in plaintiffs without prejudice. Aquilino, 2011 WL 564039, at *1, (ECF No. 353 in D.N.J. 04-cv-4100); see Aquilino v. Home Depot. U.S.A., Inc., No. 06-cv-4100 (PGS) (D.N.J. May 2, 2011) (ECF No. 353 in D.N.J. 04-cv-4100).

In June 2011, Yingling joined with other opt-in plaintiffs, filing an action in the United States District Court for the District of Connecticut, alleging violation of the FLSA and various state laws. See Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 262 (D. Conn. 2012). The Costello plaintiffs alleged violations of the FLSA and the wage and hour laws of New Hampshire, New York, and Vermont. Id. at 261. On January 10, 2012, Home Depot filed a motion in the Costello action, pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), to sever the plaintiffs' claims into seven separate actions and to transfer six of those actions to districts in other states, including New York. See id. (ECF No. 55 in D. Conn. 11-cv-0953). On April 10, 2012, the Costello Court granted Home Depot's motion. Id. at 271 (ECF No. 72 in D. Conn. 11-cv-0953).

In April and May 2012, the claims of Yingling and other New York plaintiffs were transferred to the District Court for the Northern District of New York. See Order of Transfer, filed April 30, 2012, (ECF No. 77 in D. Conn. 11-cv-0953), and Amended Order of Transfer, filed May 2, 2012 (ECF

No. 79 in D. Conn. 11-cv-0953). Discovery in this action closed on December 20, 2013. See ECF No. 95.

    b.    **Factual**[1]

Home Depot operates large warehouse-style retail stores that sell home improvement products and services. DSOF at ¶23. Each store is managed by a Store Manager and up to seven Assistant Store Managers ("ASMs"), including MASMs and SASMs, who are the second highest ranking employees, subordinate only to the store manager[2]. Id. at ¶24.

MASMs supervise from one to eleven merchandising departments, to wit: Lumber, Building Materials, Flooring, Paint, Hardware, Plumbing, Electrical, Garden, Kitchen & Bath, Millwork, and Décor. DSOF at ¶¶25-26. SASMs supervise the more specialty merchandising departments, to wit: Wall & Flooring, Kitchen & Bath, Millwork, and Decor. Id. at ¶ 26. Each merchandising department is staffed by sales associates and a department supervisor. Id. at 25. In some instances, a single department supervisor may head two departments. Id. MASMs and SASMs supervise the department supervisors and associates assigned to the merchandising departments for which they are responsible. Id.

According to the Sales Assistant Store Manager Job Description that applies to MASMs and SASMs, it is Home Depot's expectation that, *inter alia*, Assistant Store Managers:

> work with the Store Manager to develop strategies and objectives to drive sales and profitability. They provide leadership to Associates so that these strategies and objectives are

---

[1] Yingling's response to Home Depot's Statement of Material Facts Not in Dispute admits that all facts contained therein are true. See Dkt. # 171, at ¶4 ("Plaintiff makes no denials of the several paragraphs of Home Depot's Statement of Material Facts Not in Dispute.").

[2] Although the titles are different and some duties differ, SASMs and MASMs manage merchandising departments and have essentially the same roles and responsibilities and are both merchandising positions. See Dkt. #151, at ¶ 40.

3

executed successfully. Sales ASMs must analyze trends, solve problems, and develop themselves and their Associates in order to maximize contribution to store success.

Id. at ¶57.

Between July 2004 until January 2006 and again from November 2006 until July 2007, Yingling was assigned as a MASM to Home Depot store 1241 located in Albany, New York ("Albany store"). Id. at ¶31. Between January 2006 until November 2006, Yingling was employed in the Albany store as a SASM. Id. The Albany store was staffed with a store manager, three to four ASMs, including Yingling, and approximately 100 non-exempt hourly employees. Id. at ¶36. As a MASM in the Albany store, Yingling supervised several merchandising departments: Lumber, Building Materials, Hardware, Plumbing, Electrical, Garden, and Paint. Id. at 39. As an SASM at the Albany store, Yingling also supervised various merchandising departments: Flooring, Millwork, Kitchen & Bath, and Decor. Id. Yingling's former store manager confirmed that Yingling had supervisory authority over the department supervisors and associates in Yingling's assigned departments. Id. at 41. In addition to his specific merchandising departments, Yingling acknowledges that as both a MASM and a SASM at the Albany store, he was responsible for the store whenever he was working. Id. at 42.

In January 2008, Yingling transferred to a Home Depot Store in Clifton Park, New York ("Clifton Park store"), where he supervised the Lumber, Building Materials, Paint, Hardware, Plumbing, Electrical, and Garden departments. Id. at ¶49. The Clifton Park store was staffed with one store manager, four ASMs, including Yingling, and approximately 100 hourly non-exempt employees. Id. at ¶45. As an MASM in the Clifton Park store Yingling was responsible for the five department supervisors who reported directly to him and for the associates in his departments as well. Id. at ¶50.

Yingling also confirmed that at the Albany and Clifton Park stores he acted as the Manager on

4

Duty ("MOD") for "at least one-third of the hours he worked every day as a MASM." Id. at 138. As MOD, Yingling was responsible for the entire store, including "handling customer complaints and had the authority to direct the work of all the associates in the store." Id. at 139.

In September 2010, Yingling transferred laterally in the Clifton Park store where he worked as an Operations Assistant Manager ("OASM") when he took a leave of absence from which he never returned[3]. Id. at 33

### III. STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

### IV. DISCUSSION

Under both the FLSA and NYLL, there are statutory exemptions from overtime compensation

---

[3]Yingling's claims do not cover the period when he was an OASM. DSOF at ¶ 34.

requirements for employees who are classified as *bona fide* executives. See 29 U.S.C. § 213(a)(1); NYLL Article 19 § 651(5)(c). An "employee employed in a *bona fide* executive capacity" is defined as any employee:

> (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[4]

Plaintiff concedes that he satisfied three of the four prongs of the *bone fide* executive exemption contained in 29 C.F.R. § 541.100 by not contesting that: (1) his salary payments met the minimum requirements under both the FLSA and NYLL; (2) he customarily and regularly directed the work of two or more other employees; and (3) his recommendations as to an employee's change of status were given particular weight by his store managers. Plaintiff's sole contention is that it is a question for a jury to decide whether management was his primary duty. Plaintiff's argument is without merit.

In order to qualify as a *bona fide* executive, *inter alia*, an employee's primary duty must be the "management of the enterprise . . . or of a customarily recognized department or subdivision thereof . . . ." Id. The term "primary duty" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all facts in a particular case, with the major emphasis on the character of the employee's

---

[4] With the exception of the required minimum salary, New York's Codes, Rules and Regulations mirror the United States Department of Labor's definition of an "executive" employee. See 12 N.Y.C.R.R. § 142-2.14(c)(4)(i)(a)-(e).

6

job as a whole." Id.; see also Mullins v. City of New York, 653 F.3d 104, 106-07 (2d Cir. 2011). Certain factors courts consider in determining the primary duty of an employee include, but are not limited to: (1) the relative importance of exempt duties compared with other types of duties; (2) the amount of time the employee spends performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and wages paid to subordinates who performed the same type of nonexempt work. 29 C.F.R. § 541.700(a).

Plaintiff relies on several cases to substantiate his claim that summary judgment here is inappropriate. See Indergit v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 32322 (S.D.N.Y. Mar. 31, 2010); Clougher v. Home Depot U.S.A., Inc., 696 F.Supp.2d 285 (E.D.N.Y. 2010); Rubery v. Buth-Na-Bodhaige, Inc., 470 F.Supp.2d 273 (W.D.N.Y. 2007). However, these cases are distinguishable from the present case. In each of these cases, the court determined that there were genuine issues of material fact regarding the employee's actual duties that precluded summary judgment. See Indergit, 2010 WL 1327242 at *6; Clougher, 696 F. Supp.2d at 291-92; Rubery, 470 F. Supp.2d at 277. Here, by contrast, there are no genuine issues of material fact as to the duties that Plaintiff performed. As indicated, Plaintiff has made no denials of Defendant's statement of material facts. Therefore, the Court may determine whether, based on the undisputed facts, Plaintiff's primary duty was management of the enterprise or a customarily recognized department or subdivision thereof making summary judgment appropriate.

### 1.     Determination of Yingling's Primary Duty

#### a.     The Importance of Yingling's Exempt Duties

One of the factors to consider in determining the primary duty of an employee is the relative importance of exempt duties compared with other types of duties. See 29 C.F.R. § 541.700(a).

Plaintiff testified that he performed numerous management-type duties at each of the stores in which he worked.  DSOF at ¶¶42-153.  For example, Yingling admits that approximately 50% of the time, at both the Albany and Clifton Park stores, Yingling was the highest ranking manager at the store and was responsible for the store when the manager was not there.  Id. at ¶¶ 45, 54.  A major task of Yingling's as a MASM included "coaching, training and developing Associates by providing both informal (e.g. on-floor coaching) and formal (e.g. written evaluation) job performance-based feedback." Id. at 100.  Yingling also testified, *inter alia*, that he: recommended changes to employee status which includes hiring, firing, and wage increases; scheduled and directed the work of other employees; disciplined employees; conducted safety assessments; managed the inventory; placed orders for certain products; and handled employee grievances.  See DSOF at ¶¶42-153.

Further, he testified, *inter alia*, that one of his primary duties was "working to promote employees[,]" which entailed Yingling going on walks with his department supervisors, "showing them the way to make their department as profitable, clean, friendly, customer inviting as possible . . . ." Id. at 71. Yingling also trained his department supervisors to identify areas of opportunity in their departments.  Id. at 72. Yingling also testified, *inter alia*, to spending between 2 and 3 hours each workday providing hands-on training to the department supervisors and associates in his assigned departments. Id. at 108.

As a MASM, Yingling confirmed that he was responsible for preparing performance reviews of his department supervisors, and approving the reviews drafted by his department supervisors regarding the associates in his departments.  Id. at 89.  Yingling met with his store managers and other assistant store managers in a "roundtable" meeting to discuss the performance of the department supervisors.  Id. at 91. During these meetings, the store managers and other assistant store managers would offer their

opinions regarding the performance of Yingling's department supervisors for Yingling's consideration. Id. at 92. Additionally, Store Manager Gray confirmed that, at both the Albany and Clifton Park stores, the hourly wage increases that department supervisors and associates received in Yingling's departments were largely determined by the overall performance rating Yingling gave them in their performance reviews. Id. at 99.

Based on the totality of the uncontested facts, a reasonable fact finder could only conclude that Yingling's most important duties at Home Depot were managerial in nature.

### b. Yingling's Time Spent Performing Exempt Work

Another factor to consider when determining the primary duty of an employee is the amount of time the employee spends performing exempt work. 29 C.F.R. § 541.700(a). Yingling testified to spending the following time during his scheduled 60-65 hour workweek:

-One to three hours per day (5-10 hrs. per week) walking departments with his department supervisors, identifying tasks and safety issues to be addressed by the department supervisors and associates;

-Two to four hours per week attending weekly management meetings with the department supervisors;

-Half hour to an hour and a half per day (2.5-7.5 hrs. per week) delegating tasks;

-Two hours per week reviewing reports related to his merchandising departments;

-Two and three hours per week coaching and training department supervisors and associates;

-Thirty minutes to an hour per week preparing and discussing discipline issues;

-One to One and a half hours per week addressing employee and customer concerns;

-One to one and a half hours per week reviewing merchandise orders for his departments;

-One hour a week conducting interviews for new hires;

-Approximately twenty hours per year preparing annual performance reviews.

DSOF ¶145-154.

Plaintiff further admits spending the remainder of his time providing training to the department supervisors and associates on the sales floor relating to issues such as product knowledge, aisle maintenance, and customer service. Id. at 134-144. He also spent time writing and adjusting work schedules; delegating assignments; holding department supervisors and associates accountable for their performance; making item price changes and shrink plans; disciplining department supervisors and sales associates; resolving employee grievances and customer complaints; enforcing legal and safety compliance; and working alongside sales associates teaching them how to merchandise products. DSOF ¶¶42-153.

Moreover, Yingling has not identified any nonexempt duties he performed which would require a fact finder to allocate time spent between exempt and non-exempt activities. Given the uncontested record, a reasonable fact finder could only conclude that Plaintiff spent the majority of his time performing managerial functions.

     **c. Yingling's Relative Freedom From Direct Supervision**

Another factor to consider when determining an employee's primary duty is the employee's relative freedom from direct supervision. 29 C.F.R. § 541.700(a). Plaintiff argues that even though he performed managerial tasks, he was not exempt because he could not complete those tasks without approval from his superiors. Dkt. No. 171-2 at 3. For instance, Yingling argues that while he "definitely recommended to the store manager about terminations, promotions and demotions[]," and that sometimes his recommendations were accepted by store management, id., "if a significant

management decision had to be made, such as whether an employee should be hired or fired, [he] needed approval from his store manager." Id.

However, even where a manager's discretion is limited by upper management, the manager may still be considered an exempt employee. See Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982) (assistant managers were considered exempt employees under the FLSA even where their exercise of discretion was "circumscribed by prior instruction . . . ."); Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 507 (6th Cir. 2007) (stating that an employee's relative freedom from supervision "does not demand complete freedom from supervision, such that she is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry."); Yesmin v. Rite Aid of New York, Inc., 2012 U.S. Dist. LEXIS 127655, at *18 (E.D.N.Y. Sept. 6, 2012)("The fact that plaintiff was also supervised by the store manager, who was the highest ranked employee in the store, does not diminish [the plaintiff's] management of the other employees and the operation of the store.").  Thus, even assuming that Plaintiff did not have final authority in matters such as hiring and firing, this fact is of no moment because "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105. Plaintiff's responsibility here is consistent with being a *bona fide* executive because, for example, his recommendations regarding employees' changes of status were given particular weight by his superiors. 29 C.F.R. § 541.100.   Simply because Yingling did not have final supervisory authority as to certain management duties, this "does not take [him] out of realm of being a manager in the organization." Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, at *44 (E.D.N.Y. Mar. 29,

2011); see also 29 C.F.R. § 541.105.  Given the uncontested record in this case, a reasonable fact finder could only conclude that Yingling was relatively free from direct supervision in the performance of the array of his managerial duties.

### d. Yingling's Wages Were Greater Than Wages Earned by Subordinates

The final factor to consider when determining an employee's primary duty is "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).  Plaintiff contends that if his salary is reduced to an hourly wage by dividing it by his weekly hours, he was not paid substantially more than his subordinates.  However, courts have rejected engaging in "mathematical gymnastics" by dividing a manager's weekly salary by the number of hours worked each week to determine an hourly wage, and instead compare "the manager's weekly salary with the highest possible non-exempt weekly wage . . . ."  Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1278-79 (S.D. Fla. 2004).  Plaintiff's weekly salary is greater than the highest non-exempt weekly wage of his subordinates.

Moreover, even accepting Plaintiff's hypothetical hourly pay rate, there is a disparity in Plaintiff's compensation compared to his subordinates.  In July 2007, Plaintiff earned approximately $1,035.00 weekly.[5]  Assuming Plaintiff worked 55 hours per week, taking into account one hour a day for lunch, he would have earned approximately $18.81 per hour.  Assuming he worked 60 hours per week, he would have earned approximately $17.25 per hour. According to Defendant's uncontested Statement of Material Facts, the mid-range hourly rates for sales associates and department supervisors in the Albany store in 2007 were $11.87 and $16.35, respectively. In July 2008, Plaintiff earned $1,184

---

[5]This calculation is based on Yingling's annual salary in April 2007 ($53,843.00).  DSOF at ¶160.

weekly[6]. Assuming Plaintiff worked 55 hours per week, he would have earned approximately $21.54 per hour. Assuming he worked 60 hours per week he would have earned $19.74. According to Defendant's uncontested Statement of Material Facts, the mid-range hourly rates for sales associates and department supervisors in the Clifton Park store in 2008 were $11.56 and $16.05, respectively. DSOF at ¶168. Thus, Plaintiff was paid more than the employees he supervised. Moreover, Yingling received stock options that were not available to non-exempt employees. DSOF at ¶¶ 158-164. Based on these calculations as well as the stock options, a reasonable fact finder could only conclude that Plaintiff's wages were greater than those earned by his subordinates.

### e. Conclusion - Primary Duty

Based on the above factors, a reasonable fact finder could only conclude that Plaintiff's primary duty was management. See Luksza v. TJX Cos., 2014 U.S. Dist. LEXIS 10813, at *13-14 (D. Nev. Jan. 28, 2014) (finding the plaintiffs' primary duty was management where their own description of their job activities indicated the plaintiffs' responsibilities consisted of directing the work of employees, handling employee concerns, disciplining employees, planning their work, and providing for their safety and security). Thus, Plaintiff was properly classified as a *bona fide* executive exempt from the overtime compensation requirements of the FLSA and the NYLL.

## V.   CONCLUSION

For the reasons set forth above, Defendant Home Depot's motion for summary judgment [Dkt. # 151] is **GRANTED**, and Plaintiff Richard A. Yingling's claims are **DISMISSED**.

**IT IS SO ORDERED.**

Dated: August 21, 2014

---

[6]This calculation is based on Yingling's annual salary in 2008 ($61,610). DSOF at 161.

_____
Thomas J. McAvoy
Senior, U.S. District Judge