**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ARTHUR A. AMASH**, *et al.*,

                              **Plaintiffs,**

   v.                                                            1:12-cv-00837

**HOME DEPOT U.S.A., INC.**,

                                **Defendant.**

---

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiffs commenced this action asserting claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), Article 19, § 650 *et seq.* See 2nd Am. Compl., dkt. # 43. Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Defendant") moves for summary judgment dismissing the claims brought by Plaintiff Arthur A. Amash ("Amash" or "Plaintiff"). See Mot. dkt. # 153. For the reasons that follow, the motion is granted.

**II.    BACKGROUND**

    **a.    Procedural**

Amash is a former Merchandising Assistant Store Manager ("MASM") for Home Depot who had joined a FLSA conditional certified collective action entitled Aquilino v. Home Depot, Inc., Civil Action No. 04-cv-4100, filed against Home Depot in the United States District Court for the District of New Jersey in 2006 ("Aquilino action"). See Defendant's Statement of

1

Material Facts Not in Dispute in Support of its Motion for Summary Judgment ("DSOF"), at ¶¶ 7-8. The Aquilino plaintiffs, including Amash, alleged that they were misclassified as exempt employees by Home Depot under the overtime requirements of the FLSA, and sought overtime compensation. See DSOF at ¶¶ 8-9.

On February 15, 2011, the District Court of New Jersey granted Home Depot's motion to decertify the nationwide FLSA collective action. Aquilino, 2011 WL 564039, at *11 (ECF Nos. 341 and 347 in D.N.J. 04-cv-4100); DSOF at ¶10. After decertification of the collective action, by Order dated May 2, 2011, the District of New Jersey dismissed the opt-in plaintiffs without prejudice. Aquilino, 2011 WL 564039, at *1, (ECF No. 353 in D.N.J. 04-cv-4100); see Aquilino v. Home Depot. U.S.A., Inc., No. 06-cv-4100 (PGS) (D.N.J. May 2, 2011) (ECF No. 353 in D.N.J. 04-cv-4100); DSOF at ¶ 11.

In June 2011, Amash joined with other opt-in plaintiffs in an action in the United States District Court for the District of Connecticut alleging violation of the FLSA and various state laws. See Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 262 (D. Conn. 2012). The Costello plaintiffs alleged violations of the FLSA and the wage and hour laws of New Hampshire, New York, and Vermont. Id. at 261. On January 10, 2012, Home Depot filed a motion in the Costello action pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a) to sever the plaintiffs' claims into seven separate actions and to transfer six of those actions to districts in other states, including New York. See id. (ECF No. 55 in D. Conn. 11-cv-0953). On April 10, 2012, the Costello Court granted Home Depot's motion. Id. at 271 (ECF No. 72 in D. Conn. 11-cv-0953).

In April and May 2012, the claims of Amash and other New York plaintiffs were transferred to the District Court for the Northern District of New York. See Order of Transfer,

filed April 30, 2012, (ECF No. 77 in D. Conn. 11-cv-0953), and Amended Order of Transfer, filed May 2, 2012 (ECF No. 79 in D. Conn. 11-cv-0953). Discovery in this action closed on December 20, 2013. See ECF No. 95; DSOF at ¶ 22.

**b.    Factual[1]**

Home Depot operates large warehouse-style retail stores that sell home improvement products and services. DSOF at ¶ 23. Each store is managed by a Store Manager and up to seven Assistant Store Managers ("ASMs"), including MASM and Speciality Assistant Store Managers ("SASMs"), who are the second highest ranking employees, subordinate only to the store manager. Id. at ¶¶ 24-25. MASM and SASMs both supervise merchandising departments, but Amash testified that SASMs are held more accountable, specifically because they "concentrate on the sale and installation of high value projects." Id. at ¶¶ 27-28

Home Depots are composed of eleven merchandising departments, to wit: Lumber, Building Materials, Flooring, Paint, Hardware, Plumbing, Electrical, Garden, Kitchen & Bath, Millwork, and Décor. DSOF at ¶26. MASMs supervise those departments not being supervised by SASMs. Id. at ¶ 27. Each merchandising department is staffed by hourly sales associates and a department supervisor. Id. at ¶ 29. MASMs/SASMs supervise the department supervisors and associates assigned to the merchandising departments for which they are responsible. Id.

According to the Sales Assistant Store Manager Job Description that applies to MASM(s) and SASM(s), it is Home Depot's expectation that, *inter alia*, Assistant Store

---

[1] Amash's response to Home Depot's Statement of Material Facts Not in Dispute admits that all facts contained therein are true. See Dkt. # 164-1, at ¶4 ("Plaintiff makes no denials of the several paragraphs of Home Depot's Statement of Material Facts Not in Dispute.").

3

Managers:

> work with the Store Manager to develop strategies and objectives to drive sales and profitability. They provide leadership to Associates so that these strategies and objectives are executed successfully. Sales ASMs must analyze trends, solve problems, and develop themselves and their Associates in order to maximize contribution to store success.

Id. at ¶ 57.

In 2012, Home Depot released a job description specifically designed for the SASM position. Id. at ¶ 59. The description identifies, explains and assigns percentages to, *inter alia*, three major tasks/responsibilities: Ensuring Excellent Customer Service (40%), Manage Areas of Responsibility (30%), and Staffing & Development (30%). Id. at 60-62. Other responsibilities Amash testified about include: "preparing for all store events that occur in conjunction with major holidays such as Presidents' Day, Memorial Day, Labor Day, Thanksgiving and Christmas," "exercise discretion and judgment alone, and in conjunction with, the Store Manager [and others]," "maintain department profitability through analysis, trend identification and responding to identified problems[,]" and "[make[] recommendations in the selection process by assisting with recruitment, interviews, and make decisions on qualified candidates to hire[] . . . [e]valuate performance and make recommendations for personnel action, which include . . . discipline and terminations." Id. at ¶¶ 58-62. According to Amash, he not only had responsibility for his speciality departments, but "store-wide responsibility as a manager." DSOF at ¶ 67; see also Tambone Decl. at ¶¶ 11, 20; Branham Decl. at ¶¶ 11, 32; Raymond Decl. at ¶¶ 12, 24; Gray Decl. at ¶¶ 9, 22.

Amash was first promoted to a salaried ASM position in March 2003 and underwent a three-to-four month training program, which "consisted of classroom instruction and on-the-job training at Home Depot's Canton, Massachusetts training facility and several Home

4

Depot stores." DSOF at ¶¶ 30-31. Upon completion of ASM training, Amash was assigned as a SASM at store 1259 in Latham New York ("Latham store or Store 1259"), where he worked for approximately six months.[2] Id. at ¶ 32.

In November, 2003, Amash was assigned as SASM to Store 1241, located on Washington Avenue in Albany, New York ("Washington Avenue store" or "Store 1241"), where he worked for over two years. Id. at ¶¶ 33, 35. The Washington Avenue store was staffed with a store manager, three ASMs, including Amash, and over 100 "exempt and non-exempt employees, collectively known as 'associates.'" Id. at ¶¶ 35, 36. As a SASM in the Washington Avenue store, Amash supervised eight merchandising departments, to wit: Wall and Floor, Plumbing, Kitchen and Bath, Millwork, Pro Sales, Decor, and Tool Rental. Id. at ¶ 37. Amash directly supervised five department supervisors and approximately 45 associates assigned to the eight departments which he oversaw. Id. at ¶ 38.

In January 2006, Amash transferred to Store 1262 located on Central Avenue in Albany, New York ("Central Avenue Store" or "Store 1262"), because, Amash testified, the store needed "experienced managers." Id. at ¶¶ 40, 42. The Central Avenue Store was staffed by a store manager, three ASMs, including Amash and other hourly, non-exempt employees. Id. at ¶ 43. At the Central Avenue Store, Amash, as SASM, supervised: Wall and Floor, Plumbing, Kitchen and Bath, Millwork, Pro Sales, Decor, Appliances, and Tool Repair and directly supervised five department supervisors and approximately 20 non-exempt, hourly associates. Id. at ¶¶ 44, 46.

---

[2] As noted in Defendant's Statement of Material Facts, "Plaintiff's assignment to Store 1259 is outside the FLSA and NYLL statute of limitations[,] [therefore this statement of undisputed facts does not address Plaintiff's management responsibilities at Store 1259." DSOF at ¶ 32 (n.4).

5

Thereafter, in February 2009, Amash transferred back to the Central Avenue store, Store 1241 in Albany, New York, where he is still presently employed. Id. at ¶ 48. Amash testified his transfer back to Store 1241 was "'to help out to raise the morale,'" which was "due to the poor relationship between the then current SASM and the speciality associates." DSOF at ¶ 49. After returning to Store 1241, Amash supervised Wall and Floor, Kitchen and Bath, Pro Sales, Decor and Appliances, as well as two or more department supervisors, and is currently in charge of the At-Home Services department (that deals with installations), and, at some point, also supervised the Paint, Pro Sales, and Tool Rental departments. DSOF at ¶¶ 51-54. As of December, 2013, Amash was supervising six department supervisors and approximately 23 associates. Id. at 54-55.

During his years as an ASM, Amash testified to performing almost all of the Major Tasks and Responsibilities set forth in the Sales Assistant Store Manager Job Description. DSOF at ¶¶ 57-58. Further, Amash testified to performing "all of the major tasks, responsibilities and key account abilities set forth in the Speciality Asst. Store Mgr. Job Description for the entire time he has worked as a SASM at Store 1241 since February 2009." DSOF at ¶ 63 (emphasis added). Specifically, Amash testified that an "[a]ssistant manager is responsible for everyone in the store" and "everyone there is under [his] immediate supervision." Id. at ¶¶ 66, 68. In fact, even when other salaried managers are present in the store, Amash considered himself the manager on duty ("MOD") and acknowledged that he considers himself to have "storewide responsibility." Id. at 54-56 (emphasis added). Even associates not in his assigned departments, according to Amash, are his responsibility. For example, Amash testified that if he saw an employee acting incorrectly, "it's [his] responsibility to reeducate them[.]" Id. at 67. Finally, Amash testified that

6

he "run[s] the store all the time [he is] there," and when he is "there [at the store], [he is] responsible." Id. at ¶69. For example, when working at Store 1262, the Store Manager, Scott Raymond, "was a demanding manager who pushed a lot of responsibilities on the ASM," specifically because during the first year Amash was there, the Store Manager was out for "probably [ ] three months" or so, and Amash and the other ASMs "pitched in to run the store." DSOF at ¶¶ 70-71.

## III. STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

## IV. DISCUSSION

Under both the FLSA and NYLL, there are statutory exemptions from overtime

7

compensation requirements for employees who are classified as *bona fide* executives. See 29 U.S.C. § 213(a)(1); NYLL Article 19 § 651(5)(c). An "employee employed in a *bona fide* executive capacity" is defined as any employee:

> (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[3]

Plaintiff concedes that he satisfied three of the four prongs of the *bone fide* executive exemption contained in 29 C.F.R. § 541.100 by not contesting that: (1) his salary payments met the minimum requirements under both the FLSA and NYLL; (2) he customarily and regularly directed the work of two or more othis employees; and (3) his recommendations as to an employee's change of status were given particular weight by his store managers. Plaintiff solely contends that whether management was his primary duty should be a question for the jury to decide. Plaintiff's argument is without merit.

In order to qualify as a *bona fide* executive, *inter alia*, an employee's primary duty must be the "management of the enterprise . . . or of a customarily recognized department or subdivision thereof . . . ." Id. The term "primary duty" is defined as the "principal, main,

---

[3]With the exception of the required minimum salary, New York's Codes, Rules and Regulations mirror the United States Department of Labor's definition of an "executive" employee. See 12 N.Y.C.R.R. § 142-2.14(c)(4)(i)(a)-(e). In addition, under the FLSA, a claim can relate back two years from the filing date of a claim, three if Plaintiff can prove intentional/willful misclassification. 29 U.S.C. § 255(a). Under the New York Labor Law (NYLL), the statute of limitations is six years from the filing date of complaint. See NYLL Article 19 § 663(3); Wade v. Woodland Commons, LLC, No. 1:09-CV-1462, 2012 WL 929839, at *6 (N.D.N.Y. Mar.19, 2012); see also Winfield v. Citibank, 843 F. Supp.2d 397, 411 (S.D.N.Y. 2012) (" Under New York law . . . unlike [under] the FLSA[, these] claims[] have a six-year statute of limitations.").

8

major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id.; see also Mullins v. City of New York, 653 F.3d 104, 106-07 (2d Cir. 2011). Certain factors courts consider in determining the primary duty of an employee include, but are not limited to: (1) the relative importance of exempt duties compared with other types of duties; (2) the amount of time the employee spends performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and wages paid to subordinates who performed the same type of nonexempt work. 29 C.F.R. § 541.700(a).

Plaintiff relies on several cases to substantiate his claim that summary judgment is inappropriate. See Indergit v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 32322 (S.D.N.Y. Mar. 31, 2010); Cloughis v. Home Depot U.S.A., Inc., 696 F. Supp.2d 285 (E.D.N.Y. 2010); Rubery v. Buth-Na-Bodhaige, Inc., 470 F. Supp.2d 273 (W.D.N.Y. 2007). However, these cases are distinguishable from the present case. In each of these cases, the court determined that there were genuine issues of material fact regarding the employee's actual duties that precluded summary judgment. See Indergit, 2010 WL 1327242 at *6; Cloughis, 696 F. Supp.2d at 291-92; Rubery, 470 F. Supp.2d at 277. Here, by contrast, there are no genuine issues of material fact as to the duties that Plaintiff performed. As indicated, Plaintiff has made no denials to Defendant's Statement of Material Facts. Therefore, the Court may determine whether, based on the undisputed facts, Plaintiff's primary duty was management of the enterprise or a customarily recognized department or subdivision thereof making summary judgment appropriate.

9

1. **Determination of Amash's Primary Duty**

    a. **The Importance of Amash's Exempt Duties**

One of the factors to consider in determining the primary duty of an employee is the relative importance of exempt duties compared with other types of duties. See 29 C.F.R. § 541.700(a). Plaintiff testified that he performed numerous managerial duties during his employment as a MASM. DSOF at ¶¶ 57-276. For example, he attests that at each store in which he worked he spent time each week acting as the closing manager, the opening manager, and as the MOD. Id. at ¶¶ 236-264. In each of these roles, Amash was for a time the only salaried manager in the store and as such was responsible for managing the entire store. Id. at ¶¶ 237-241, 243-245, 258-259. When acting as the MOD, he had the authority to direct the work of all of the associates within the store and was equally responsible as the designated MOD for every minute of every shift, even when multiple MODs were present in the store. Id. at ¶¶ 259-260, 263. In his capacity as SASM, Amash also provided training that occurred on a daily basis, whether in the form of daily staff meetings, or when he engaged in walks of departments and created his "tour notes" for the department supervisors, which prioritized the tasks he was delegating and wanted completed. Id. at ¶¶ 72-78. In addition to training and supervising, Amash also recommended changes regarding employee status which include hiring, firing, promotions and terminations; scheduled and directed the work of other employees; disciplined employees; managed the inventory; approved inventory orders; and managed the store's financial performance. See DSOF at ¶¶ 57-276.

Plaintiff's brief posits that the sum of the SASM responsibilities combined with what Amash actually performed demonstrate that his position was misclassified as exempt. Pl.

MOL at 3 (dkt. No. 164-2).  Plaintiff asserts that his primary duties consisted of non-managerial functions.  However, nowhere in the record is there supporting testimony or evidence for Plaintiff's assertion, or even a mention of any specific non-exempt duties Plaintiff performed.  Further, as previously mentioned, Plaintiff's response to Defendant's Statement of Material Facts makes no denials.  Dkt. # 164-1, ¶4; see *supra* note 1.  Finally, as corroborated by the three store managers, Plaintiff's managerial responsibility as opening, closing and MOD were among the most important tasks he performed and were more important to the success of the stores than the performance of any non-managerial duties he may have performed.  DSOF at ¶ 264.

Plaintiff has also failed to specifically contest any of the above assertions concerning his responsibilities as SASM.  Further, he has not identified the amount, frequency, or nature of any non-exempt duties that he performed.  Based on the totality of the uncontested facts, a reasonable fact finder could only conclude that Amash's most important duties at Home Depot were managerial in nature.

### b. Amash's Time Spent Performing Exempt Work

Another factor to consider when determining the primary duty of an employee is the amount of time the employee spends performing exempt work.  29 C.F.R. § 541.700(a).  As a SASM, Amash was scheduled to work 55 hours each week.  Amash testified to spending a considerable amount of his time performing managerial tasks; specifically stating he spent 90% of his shift on the sales floor and the other 10% of his time pulling reports, performing confidential work on the computer or engaging in other such activities.  Id. at ¶¶ 259, 273.  In this regard, Amash testified to the following division of labor for a typical five day work week

11

since his move to Store 1241 in February 2009:

- Spends 60% of his time walking his departments to ensure they meet store standards.

- Conducts store walks "every single Monday" to determine what will happen during the week.

- Speaks to his department supervisors every day about the operations of the departments.

- Devotes 10% of his time to writing "tour" notes and follows up to ensure completion.

- Spends 5% of his time meeting with his department supervisors and associates for training or reviewing department issues.

- Spends one hour attending various types of management or staff meetings.

- Spends two or three hours meeting with his associates for "Specialty Tuesdays."

- Spends approximately one hour interviewing for purposes of hiring, promotion or transfer.

- Spends five hours analyzing store report data.

- Spends three hours monthly reviewing the Specialty Checklists and "game plans" with the associates in his departments.

- Spends approximately six hours monthly drafting or discussing performance evaluations.

DSOF ¶ 276.

Plaintiff further testified to doing some work at home such as reading and prioritizing emails, and that in reviewing each email, he decides whether to take action himself or to delegate the work to someone else. Id. at ¶ 276.

Also, when acting as the closing manager, opening manager, or MOD, Amash spent time as the only salaried manager in the store for periods ranging from 3-11 hours per shift, and ranging from 5-15 out of 20 days per month. Id. at ¶¶ 236-258. Moreover, Amash

testified to spending 95% of his time at one point as the closing manager, where he was the only salaried manager in the store for 3-4 hours per shift. Id. at ¶¶ 238, 240.

Further, Amash has not identified a single nonexempt duty he performed which would require a fact finder to allocate time spent between exempt and non-exempt activities. Even assuming that Amash did spend time doing non-exempt work (despite the lack of any evidence in the uncontested record), this would not change his exempt status. See 29 C.F.R. §§ 541.700(a), 541.106(b), 541.703 (noting that Department of Labor regulations recognize that multi-tasking, or the engaging in of both exempt and non-exempt duties simultaneously does not alter an employee's exempt status); see also Donovan v. Burger King Corp., 675 F.2d 516, 517, 520-21 (2d. Cir 1982) (discussing exempt status of assistant managers who spent considerable amount of time performing the same work as non-exempt hourly employees, but who simultaneously performed key managerial duties such as assigning tasks to hourly employees, handling customer complaints, ensuring assigned duties were performed, running cash checks, and determining amounts of food to be prepared; all duties which ensured successful operation of the business).

Therefore, the time Amash spent on the floor working with his associates does not alter the fact that his time was still being spent acting concurrently as a manager to department supervisors, associates, and on occasion the entire store. Given the uncontested record, a reasonable fact finder could only conclude that Plaintiff spent the majority of his time performing managerial functions.

### c. Amash's Relative Freedom From Direct Supervision

Another factor to consider when determining an employee's primary duty is the employee's relative freedom from direct supervision. 29 C.F.R. § 541.700(a). Plaintiff

argues that even though he performed some managerial tasks, he was not exempt because he could not complete those tasks without approval from his superiors. Pl. MOL at 6 (dkt. No. 164-2). For instance, Amash argues that while he made recommendations to the store manager about hiring, firings and promotions, and that sometimes his recommendations were accepted by store management, he contends that "if a significant management decision had to be made, such as when an employee should be hired or fired, [he] needed approval from his store manager." Pl. MOL at 5-6 (dkt. No. 164-2); DSOF at ¶¶ 136-160, 161-181. Moreover, Amash did not have the authority to terminate an employee without prior approval. DSOF at ¶ 177.

However, even where a manager's discretion is limited by upper management, the manager may still be considered an exempt employee. See Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982) (assistant managers were considered exempt employees under the FLSA even when their exercise of discretion is "circumscribed by prior instruction . . . ."); Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 507 (6th Cir. 2007) (stating that an employee's relative freedom from supervision "does not demand complete freedom from supervision, such that he is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry."); Yesmin v. Rite Aid of New York, Inc., 2012 U.S. Dist. LEXIS 127655, at *18 (E.D.N.Y. Sept. 6, 2012)("The fact that plaintiff was also supervised by the store manager, who was the highest ranked employee in the store, does not diminish [the plaintiff's] management of the other employees and the operation of the store."). Thus, even assuming that Plaintiff did not have final authority in matters such as hiring, this fact carries little weight because "[a]n employee's suggestions and recommendations may still be deemed to have

14

'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105.   Plaintiff's responsibility here is consistent with being a *bona fide* executive because, for example, his recommendations regarding employees' changes of status were given particular weight by his superiors.  See DSOF at ¶¶46-54; 29 C.F.R. § 541.100.  Further, Amash could extend a job offer when there was an excellent candidate, the Store Manager was not available to conduct the final interview, and at least two ASMs had conducted the interview.  DSOF at ¶¶ 149.  Amash's lack of final supervisory authority as to specific management duties "'does not take [him] out of the realm of being a manager in the organization.'"  Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, at *13 (E.D.N.Y.  Mar. 29, 2011)(quoting Gellhaus v. Wal-Mart Stores, Inc., No. 10–CV–123 (MAC), 2011 U.S. Dist. LEXIS 25582, at *27 (E.D.Tex. Mar. 10, 2011)); see Scott v. SSP Am., Inc., 2011 U.S. Dist. LEXIS 32819, at *11, 13 (E.D.N.Y.  Mar. 29, 2011) (sufficiently free from supervision factor satisfied where Plaintiff "had to use good judgement regularly" and "had to exercise discretion on a continuing basis throughout the day . . . ."); see also 29 C.F.R. § 541.105. Whether in the course of his duties as a SASM or the MOD, Amash used discretion in delegating the numerous task and responsibilities in connection with the many departments and employees that he was responsible for. DSOF at ¶¶ 57-276. Specifically, Amash had modified the schedule under certain circumstances, even after the store manager had expressed a desire that no one change it.  DSOF at ¶ 132.

Given the uncontested record in this case, a reasonable fact finder could only conclude that Amash was relatively free from direct supervision in the performance of the

15

array of his managerial duties.

### d. Amash's Wages Were Greater Than Wages Earned by Subordinates

The final factor to consider when determining an employee's primary duty is "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Plaintiff contends that if his salary is reduced to an hourly wage by dividing it by his weekly hours, he was not paid "substantially more than his subordinates." See Pl. MOL at 6-7 (dkt. No. 164-2). However, and in contravention to Plaintiff's assertions, courts have rejected engaging in "mathematical gymnastics" by dividing a manager's weekly salary by the number of hours worked each week to determine an hourly wage, and instead compare "the manager's weekly salary with the highest possible non-exempt weekly wage . . . ." Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1278-79 (S.D. Fla. 2004). Plaintiff's weekly salary is greater than the highest non-exempt weekly wage of his subordinates.

Moreover, even accepting Plaintiff's hypothetical hourly pay rate, there is a disparity in Plaintiff's compensation compared to his subordinates. As previously mentioned, Amash testified that he normally worked 55 hours a week and testified that he understood he may be required to work more than 55. DSOF at ¶ 272. In 2009 Plaintiff earned $1,093.53 weekly.[4] Assuming Plaintiff worked 55 hours per week, the hourly rate would be approximately $19.89 per hour. According to Defendant's uncontested Statement of Material Facts, the mid-range

---

[4]This calculation is based on Amash's annual salary of $56,239.00 in 2009. DSOF at ¶ 290. This same year, 2009, Amash also earned a bonus of $8,467.80 and received 171 shares of restricted stock. Id. at 290. In 2010, Amash's annual salary was $61,369.00 and he was awarded a MIP bonus of $11,289.41 and 130 shares of restricted stock, and an additional bonus of $4,463.12 in September, 2010. Id. at ¶ 291. Amash received similar raises and MIP bonuses and restricted stock every year after he was promoted to ASM in 2003. See DSOF at ¶¶ 283-295.

hourly rates, between 2007-2009, for sales associates and department supervisors where Plaintiff worked were $11.87 and $16.35, respectively. Id. at ¶297.[5] Thus, Plaintiff was paid more than the employees he supervised. Furthermore, Amash was entitled to stock options and a monetary bonus based upon the financial success of his store and his own individual performance, both of which he received every year that he held an ASM position and which were not available to non-exempt employees. Id. at ¶¶ 282, 283-294. Also, as a ASM, Amash testified to understanding that his salary covered all the work he performed. Id. at ¶ 279. Based on these calculations as well as the stock options and possible monetary bonus, a reasonable fact finder could only conclude that Plaintiff's wages were greater than those earned by his subordinates.

### e. Conclusion - Primary Duty

Based on the above factors, a reasonable fact finder could only conclude that Plaintiff's primary duty was management. See Luksza v. TJX Cos., 2014 U.S. Dist. LEXIS 10813, at *13-14 (D. Nev. Jan. 28, 2014) (finding the plaintiffs' primary duty was management where their own

description of their job activities indicated the plaintiffs' responsibilities consisted of directing the work of employees, handling employee concerns, disciplining employees, planning their work, and providing for their safety and security). Thus, Plaintiff was properly classified as a *bona fide* executive exempt from the overtime compensation requirements of the FLSA and

---

[5] See DSOF at ¶¶ 295-299 - Mid-range hourly rates for sales associates and department supervisors–in the respective stores where Amash worked–during: 2004 ($12.08 and $15.95); 2005-2006 ($11.58 and $15.95); 2007-2009 ($11.87 and $16.35); 2010-2012 ($11.85 and $16.35); 2013 ($11.00 and $15.50). See also Silk Decl. at ¶¶ 10a - 10e (Same).

NYLL.

**V. CONCLUSION**

For the reasons set forth above, Defendant Home Depot's motion for summary judgment [Dkt. # 153] is **GRANTED**, and Plaintiff Arthur R. Amash's claims are **DISMISSED**.

**IT IS SO ORDERED.**

Dated: September 23, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge